IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PETER DAVID SCHIFF, | |
| Plaintiff, | CIVIL NO. 3:24-cv-1511 (CVR-MEL) |
| v. | |
| INTERNAL REVENUE SERVICE, *et al.*, | |
| Defendants. | |

**DEFENDANT WILLIAM DAY'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ....................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

   I.   The Court lacks subject-matter jurisdiction under Rule 12(b)(1) and personal jurisdiction under Rule 12(b)(2) .................................................................................................................. 5

    A. Legal standard for subject-matter jurisdiction and personal jurisdiction ........................... 5

    B. Australia is the "real party in interest" ................................................................................ 6

    C. Because Australia is the real party in interest, the FSIA applies ....................................... 9

       1.   The commercial activities exception does not apply, as the gravamen of Plaintiff's complaint is conduct that is inherently sovereign in nature ............................................. 10

       2.   The noncommercial tort exception does not apply, as Plaintiff's claims arise from discretionary functions and sound in malicious prosecution, libel, and interference with contract rights .......................................................................................................................... 12

   II.   Plaintiff fails to state a claim under each of the four causes of action .............................. 14

    A. Legal standard under Rule 12(b)(6) ................................................................................... 14

    B. Section 1985(3) does not apply to foreign sovereigns ...................................................... 14

    C. Plaintiff fails to state a claim under 42 U.S.C. § 1985(3) because he fails to identify any membership in a protected class, discriminatory animus, or any facts indicating any agreement among coconspirators ..................................................................................... 15

    D. Plaintiff also fails to state a claim as to the newly pled causes of action of tortious interference with business relations, defamation, and violation of civil rights under *Bivens v. Six Unknown Named Agents* ...................................................................................... 17

       1.   Plaintiff fails to allege the existence of a contract .................................................... 17

       2.   Plaintiff fails to state a claim for defamation as Plaintiff asserts only Mr. Lee made allegedly defamatory statements .................................................................................... 17

       3.   *Bivens* actions are limited to U.S. federal officials and the Court must decline to extend *Bivens* to new causes of action ............................................................................. 18

    E. Plaintiff's claims are barred by the statute of limitations ................................................. 18

   III.   Plaintiff did not properly serve Australia ......................................................................... 20

CONCLUSION ......................................................................................................................... 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PETER DAVID SCHIFF, | |
| Plaintiff, | CIVIL NO. 3:24-cv-1511 (CVR-MEL) |
| v. | |
| INTERNAL REVENUE SERVICE, *et al.*, | |
| Defendants. | |

**DEFENDANT WILLIAM DAY'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW Defendant William Day ("Mr. Day"), in his official capacity as the Deputy Commissioner of the Australian Taxation Office ("ATO"), by and through the undersigned counsel, and without submitting to the jurisdiction and venue of this Court nor waiving any defense whatsoever, respectfully states and moves to dismiss the claims asserted against him in Plaintiff's Second Amended Complaint, ECF No. 121, pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). In support of this Motion, Mr. Day states as follows:

**INTRODUCTION**

Plaintiff has filed a sparse, seven-page complaint that has now been twice amended, accusing officials of four foreign sovereign nations of conspiring with Puerto Rican and U.S. officials to violate laws that do not and cannot apply to them. Yet nowhere in Plaintiff's complaint does he acknowledge the sovereignty issues implicated by his complaint, and he does not plead any facts that would allow him to overcome the substantial and, in this case, insurmountable obstacles that sovereign immunity provides.

Perhaps even more perplexing is Plaintiff's attempts to drag individual foreign government officials into U.S. litigation, and side-step sovereign immunity questions, when Plaintiff's

1

allegations can only be read as a complaint against the sovereigns themselves.  Here, it is Mr. Day, an official of the ATO, who is Plaintiff's stand-in for the legitimate law enforcement activities of the Government of the Commonwealth of Australia ("Australia") as part of the "J5" Joint Chiefs of Global Tax Enforcement.

This Court should dismiss Plaintiff's complaint as to Mr. Day (and hence Australia) with prejudice.  Mr. Day and Australia are immune from suit and are not subject to the jurisdiction of this Court.  Moreover, although the Court need not address any other issue and putting aside this absolute bar to Plaintiff's complaint against Mr. Day, Plaintiff fails to allege the basic facts to support any of the four causes of action asserted against Mr. Day.  Finally, despite the multiple extensions to serve foreign defendants, Plaintiff has failed to properly serve Australia (i.e., Mr. Day in his official capacity).

## STATEMENT OF FACTS

Mr. Day will be very brief in reciting the facts to avoid unnecessary repetition with the several other motions to dismiss filed in this matter.  Plaintiff's Second Amended Complaint, ECF No. 121,[1] alleges a broad conspiracy between each of the Defendants to violate his civil rights, which allegedly deprived Plaintiff of property without due process and caused him reputational and financial harm.  The alleged conspiracy appears to include four distinct elements: (1) The Office of the Commissioner of Financial Institutions' ("OCIF") block of the bank stock sale on May 16, 2022; (2) the June 30, 2022 press conference at which an official of the U.S. Internal Revenue Service allegedly "falsely implied" criminal wrongdoing and illegal activity, which was

---

[1] Plaintiff has filed two "Amended Complaints" in this litigation, ECF No. 10, and ECF No. 121.  Australia will refer to the complaint filed on November 14, 2024, at ECF No. 10, as the "First Amended Complaint" or "FAC," and the operative complaint filed on June 5, 2025, at ECF No. 121, as the "Second Amended Complaint" or "SAC."

reported by the media defendants and allegedly caused Plaintiff reputational and financial harm; (3) publication of "unsubstantiated allegations" of confidential information "leaked by J5/IRS agents" by the New York Times and The Age Defendants; and (4) the "closure" of Euro Pacific Bank. SAC, Factual Allegations, ¶¶ 2, 3, & 4; Intro., para. 4.[2] Each of these elements are allegedly tied together by "coordination" between each of the Defendants, stemming from a "joint J5 enforcement initiative." *See* id., Factual Allegations ¶ 1; Intro., paras. 3 & 4; Count II.

The SAC contains two references to Mr. Day. In the "Introduction," Plaintiff alleges that "ATO Deputy Commissioner Will Day" sent an email to Mr. Lee "congratulating the IRS for 'negotiating today's outcome with OCIF.'" SAC, Intro., para. 3. Then in a list of Defendants, Mr. Day is included in a list of "J5 members." SAC, Defendants. Mr. Day is not included in the case caption despite the Federal Rules of Civil Procedure's requirement that a complaint's title include all parties. *See* Fed. R. Civ. P. 10(a); *Fromberg v. City of Marlborough*, No. 15-14183-LTS, 2016 U.S. Dist. LEXIS 112, at *8 (D. Mass. Jan. 4, 2016) ("The title of the amended complaint must name all the parties.").

Based on this single email and alleged "coordination" among Defendants, Plaintiff asserts six causes of action, of which four are asserted against Mr. Day: (1) conspiracy to violate civil rights under 42 U.S.C. § 1985(3) (Count II) for an alleged "[c]oordinated campaign to damage Plaintiff via closure, press, and media dissemination";[3] (2) tortious interference with business relations related to the bank stock sale (Count IV); (3) defamation for statements made by Mr. Lee

---

[2] Despite the requirements of Fed. R. Civ. P. 10(b), Plaintiff does not use consistent paragraph numbering in his SAC. To provide as much detail as possible, Mr. Day will cite to the relevant "Section" and identify which subparagraph contains the cited material to the best of his ability.

[3] Only one of those claims, the conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985(3), was asserted in the First Amended Complaint, ECF No. 10.

3

during the June 30, 2022 press conference (Count V); and (4) a cause of action under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971) ("*Bivens*"), for an alleged conspiracy to deprive Plaintiff of property without due process (Count VI). *Id.*

Of note, in the FAC, Plaintiff listed Mr. Day (and other foreign officials) in his personal and official capacity in his list of Defendants and in his case caption; in the SAC, which is the operative complaint, Plaintiff dropped any reference to suing Mr. Day (or the other foreign officials) in his personal capacity, while still asserting that he was suing another governmental official Defendant, Internal Revenue Service agent Jim Lee, in both his personal and professional capacities. Accordingly, Australia construes any claims against Mr. Day in his personal capacity to have been dismissed. *See Díaz v. P.R. Dep't of Corr. & Rehab.*, No. 16-1176 (PG), 2016 U.S. Dist. LEXIS 142870, at *2 (D.P.R. Oct. 14, 2016) ("the filing of the amended complaint in which the original parties are not named operates as a dismissal of those parties from the litigation with no further Court order being necessary") (internal quotation marks and citations omitted).

Importantly, Plaintiff's SAC lacks certain critical facts but relies heavily on unsupported, conclusory allegations.[4] For example, Plaintiff repeatedly references the "bank closure" as a key element of harm in his SAC, but all allegations related to the closure are conclusory statements about coordinated conduct without facts about the closure itself or the injury Plaintiff allegedly suffered as a result. *See* SAC, Intro., paras. 3 & 4; Factual Allegations, ¶¶ 2 & 7, Count I, II & VI. Furthermore, Plaintiff makes three claims for harm related to violation of due process and illegal

---

[4] While Plaintiff has made numerous other factual allegations in his briefs and previous complaints, none of those allegations can be relied on to survive a motion to dismiss. On this point, Australia incorporates Eric Ferron's Reply in Further Support of Motion to Dismiss Amended Complaint under Fed. R. Civ. P. 12(b)(1), 12(b)(5) and 12(b)(6), at 1-2, ECF No. 148, pursuant to Loc. R. 7(f).

seizure but does not provide any facts to identify the Defendants' conduct underlying the alleged harm. *See id.*, Intro., paras. 1 and 2, at 1-2; Counts I, III & VI.

## ARGUMENT

I.    **The Court lacks subject-matter jurisdiction under Rule 12(b)(1) and personal jurisdiction under Rule 12(b)(2)**

A.    **Legal standard for subject-matter jurisdiction and personal jurisdiction**

The Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* ("FSIA"), applies to Mr. Day in this case because, as discussed further below, Australia is the real party in interest. The FSIA "'provides the sole basis for obtaining jurisdiction over a foreign state in Federal court.'" *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts.*, 727 F.3d 10, 16 (1st Cir. 2013) (*quoting Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Under the FSIA, a foreign sovereign is presumptively immune from suit in the United States. Unless an enumerated exception applies, federal courts lack both personal and subject-matter jurisdiction to decide the case. 28 U.S.C. § 1604; *Republic of Hungary v. Simon*, 145 S. Ct. 480, 488 (2025).

Under the burden-shifting framework adopted by the First Circuit:

Once a defendant shows that it is a foreign state, the plaintiff has an initial burden of production to offer evidence that supports an exception to immunity. *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 727 F.3d 10, 17 (1st Cir. 2013). If the plaintiff satisfies its burden of production, then the foreign state holds the ultimate burden of persuasion. *Id.*

*Marrero-Rolon v. Autoridad De Energia Electrica De P.R.*, No. 15-1167 (JAG), 2016 U.S. Dist. LEXIS 192916, at *13 (D.P.R. Mar. 31, 2016); *see also Rodriguez v. Republic of Costa Rica,* 934 F. Supp. 493, 497 (D.P.R. 1996) (explaining the burden shifting framework applied at that time).

### B.    Australia is the "real party in interest"

Plaintiff's Second Amended Complaint refers to Mr. Day with his official title and makes no reference to suing him in his personal capacity. *See* SAC, Parties, Defendants, at 2, 3. Where foreign officials are sued relating to their official capacities, this Court must investigate whether the actions "should be treated as actions against the foreign state itself, as the state is the real party in interest." *Samantar v. Yousef*, 560 U.S. 305, 325 (2010); *see also Hussein v. Maait*, 129 F.4th 99, 113 (2d Cir. 2025); *Edwards v. Fed. Gov't of Nigeria*, No. 18-11133-FDS, 2018 U.S. Dist. LEXIS 212827, *6 (D. Mass. Dec. 18, 2018).[5] While the FSIA does not automatically govern the immunity claims of foreign officials, it does govern suits where the state is the real party in interest; plaintiffs cannot merely plead around the restrictions of the FSIA by suing foreign officials instead. *Samantar*, 560 U.S. at 325; *Hussein*, 129 F.4th at 112.

Courts in this Circuit and others have held that a foreign sovereign is the real party in interest when the complaint discusses the named foreign officials only in relation to their duties as officers of the foreign sovereign. *Nagy v. Naday*, No. 17-10613-LTS, 2019 U.S. Dist. LEXIS 225127, at *5-6 (D. Mass. June 28, 2019); *Edwards*, 2018 U.S. Dist. LEXIS 212827, at *6-7; *see also Li v. Li*, No. 20-2008, 2023 U.S. Dist. LEXIS 60329, at *10-11 (D.D.C. Apr. 5, 2023), *aff'd*, 2024 U.S. App. LEXIS 27508 (Oct. 29, 2024).[6] Similarly, courts find the sovereign the real party

---

[5] The "real party in interest" analysis for foreign officials draws on the same foundation and principles as litigation against federal officials sued in their official capacity. *Samantar*, 560 U.S. at 325, citing *Kentucky. v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

[6] "If the suit is against the official personally, then the common law regarding sovereign immunity applies, but if the state is the real party in interest, then the suit should be treated as an action against the foreign state itself to which the FSIA would apply." *Edwards*, 2018 U.S. Dist. LEXIS 212827, at *6 (internal quotation marks and citations omitted). Hence, contrary to the specific wording and allegations of the SAC, if the Court finds that somehow the action is against

in interest where the plaintiff's complaint targets the actions of the state or conflates the individual with state acts. *See, e.g.*, *Gomes v. ANGOP*, No. 11-CV-0580 (DLI) (JO), 2012 U.S. Dist. LEXIS 119049, at *55 (E.D.N.Y. Aug. 22, 2012), *aff'd*, 541 F. App'x 141 (2d Cir. 2013) (unpublished). (finding Angola the real party in interest where the plaintiff only alleged actions by the government and its agencies and made no allegations "regarding actions taken by [the individual named officials] outside their respective roles in Angola's political structure."); *Qandah v. Johor Corp.*, No. 20-1991, 2021 U.S. App. LEXIS 34853, at *15-16 (6th Cir. Nov. 22, 2021); *compare Angellino v. Royal Family Al-Saud,* 681 F.3d 463, 467 n.6. (D.C. Cir. 2012) (finding a breach of contract action for the Saudi Royal Family's failure to pay for art that they commissioned was against those persons in their individual capacities because the breach of contract claim was not based on any act of state such that the foreign state itself was the real party in interest.).

Courts also consider the nature of the remedies sought. Requested remedies may, by nature of the claim or by magnitude of relief, directly or unavoidably be recoverable from the state; in such cases, the suit is understood to be brought against the state itself and not the individual state officials, regardless of the capacity in which those officials are named. *Hussein*, 129 F.4th at 115 (*quoting Samantar*, 560 U.S. at 325).

The SAC contains no allegations of "personal acts" on which a personal liability suit could be maintained. Instead, Plaintiff treats the J5 as a government agency, akin to the IRS and OCIF, and makes it clear that he is targeting the law enforcement actions of Australia, not the individual actions of Mr. Day personally. SAC, Factual Allegations, ¶ 1, Intro., para. 3 (alleging that the newly named IRS agents "orchestrated the closure of Euro Pacific Bank in coordination with

---

Mr. Day personally, the Court would be required to address sovereign immunity issues under the common law.

OCIF and J5" as publicity for "J5's agenda."); *see also* SAC, Factual Allegations, ¶ 1 & ¶ 3; SAC, Count VI.  The sole reference to an act performed by Mr. Day in the SAC specifically identifies him as the "ATO Deputy Commissioner" and involves an email with a representative of the IRS, communication which would be undertaken in Mr. Day's professional capacity.[7]  This is consistent with the course of proceedings.  In prior filings, Plaintiff explicitly referred to the conspiracy as between "government agencies," not individual participants.  *See, e.g.*, Pl.'s Opp. to the New York Times Company's Mot. to Dismiss at 2, ECF No. 65 (stating that Plaintiff's 42 U.S.C. § 1985(3) claim is based on "specific instances of collusion between The New York Times, Goldstein, and government agencies"); Pl.'s Opp. to The Age Defendants' Mot. to Dismiss at 11, ECF No. 103; Pl.'s Opp. to OCIF Mot. to Dismiss at 9, ECF No. 44.

This is insufficient to find that the claims are against Mr. Day in his personal capacity.  *See e.g., Qandah*, 2021 U.S. App. LEXIS 34853, at *15-16 (finding the plaintiff sued the individual defendant only in his official capacity where the plaintiff made no distinction between the individual and the sovereign entity).  And law-enforcement agencies performing core government functions are considered to be part of a "foreign state" subject to the same protections as the state itself.  *See Edwards*, 2018 U.S. LEXIS 212827, at *5.

Finally, the nature of Plaintiff's remedies is also indicative that Plaintiff intends any judgment to be enforceable against Australia and other sovereigns.  Plaintiff does not indicate that he seeks damages only from Mr. Day's "own pockets," and the size of Plaintiff's requested

---

[7] Plaintiff even occasionally refers to the combined "IRS/J5" group as U.S. federal actors or government agencies.  *See, e.g.*, Pl.'s Opp. to Defendant Lugo's Mot. to Dismiss at 12, ECF No. 45 ("Federal officials, including IRS and J5 members, coordinated…"); Pl.'s Opp. to The Age Defendants' Mot. to Dismiss 11, ECF No. 103 (arguing Plaintiff alleged "intentional coordination between Defendants and US government agencies (IRS/J5 and OCIF)").

damages ($49.8-$56 million, plus interest, costs, and fees) alone means Plaintiff's suit can be understood as a suit against the states themselves. *See Hussein*, 129 F.4th at 115.

While Plaintiff has argued in other filings that other foreign sovereigns are not the real party in interest because their officials acted ultra vires (see Pl.'s Opp. to Mr. Ferron's Mot. to Dismiss at 1, 10, ECF No. 138), that argument is unavailing. First, the complaint does not allege any facts plausibly suggesting that Mr. Day engaged in any conduct outside of his official responsibilities. But even if there were any such allegations, there is no recognized exception to foreign sovereign immunity in a suit for money damages even where a foreign official has acted ultra vires. *See Hussein*, 129 F.4th at 118-19 (explaining that the ultra vires exception does not apply to suits seeking damages).

### C. Because Australia is the real party in interest, the FSIA applies

As Australia is the real party in interest, the Foreign Sovereign Immunities Act "'provides the sole basis for obtaining jurisdiction over a foreign sovereign in the courts of this country.'" *Universal Trading & Inv. Co.*, 727 F.3d at 16. Under the FSIA, a foreign sovereign is presumptively immune from suit in the United States; unless an enumerated exception applies, federal courts lack both personal and subject-matter jurisdiction to decide the case. 28 U.S.C. § 1604; *Republic of Hungary*, 145 S. Ct. at 488.

The enumerated exceptions to FSIA immunity are narrow and explicitly codified in 28 U.S.C. § 1605.[8] Plaintiff does not specifically plead any recognized exception to sovereign

---

[8] These exceptions include cases involving the waiver of immunity (§ 1605(a)(1)), commercial activities occurring in or causing a direct effect in the United States (§ 1605(a)(2)), property expropriated in violation of international law (§ 1605(a)(3)), inherited, gift, or immovable property located in the United States (§ 1605(a)(4)), noncommercial torts occurring in the United States (§ 1605(a)(5)), and maritime liens (§ 1605(b)). 28 U.S.C. § 1605; *Argentine Republic,* 488 U.S. at 439. Foreign sovereigns are likewise not immune from suit when the plaintiff seeks money damages resulting from certain allegations of state-sponsored terrorism. 28 U.S.C. § 1605A.

immunity.  *See* 28 U.S.C. § 1605(a)(1).  Australia explicitly denies any waiver has been made; as

such, Section 1605(a)(1) is inapplicable.  Plaintiff's other filings suggest that he seeks to rely on

two exceptions to sovereign immunity: the commercial activities exception (28 U.S.C.

§ 1605(a)(2)) and the noncommercial tort exception (28 U.S.C. § 1605(a)(5)).  However, the

factual allegations set forth in Plaintiff's SAC do not support the application of either exception.

        *1.*    *The commercial activities exception does not apply, as the gravamen of*
              *Plaintiff's complaint is conduct that is inherently sovereign in nature*

Section 1605(a)(2) of the FSIA excludes from sovereign immunity cases in which

> the action is based upon a commercial activity carried on in the United
> States by the foreign state; or upon an act performed in the United States in
> connection with a commercial activity of the foreign state elsewhere; or
> upon an act outside the territory of the United States in connection with a
> commercial activity of the foreign state elsewhere and that act causes a
> direct effect in the United States[.]

28 U.S.C. § 1605(a)(2).  Here, Plaintiff's complaint is not based upon any "commercial activity"

of Australia or any act in connection with a commercial activity of Australia.  Within the meaning

of the FSIA, activity is "commercial" in nature not where it is motivated by profit or commerce,

but rather where the nature of the activity is such that private commercial actors can also engage

in the activity.  *See Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888 (D.C. Cir. 2006).

Consistent with this, courts have found that where the complained-of conduct involves the

investigation and seizure of commercial entities and their subsequent disposal, that conduct is

inherently sovereign in nature and is not commercial activity within the meaning of the FSIA.  *See*

*id.* (government's seizure of corporation and sale at 6% of market price was not commercial

activity); *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021) (Ukrainian officials' alleged

scheme to expropriate private property and use it for commercial endeavors to benefit themselves

and family members was not commercial activity); *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167,

187-88 (D.D.C. 2007) (government's investigation of company, initiation of tax proceedings, seizure of property, and auction of property were not commercial activity).

The gravamen of Plaintiff's complaint is that a bank owned by Plaintiff was subject to scrutiny from governmental agencies as part of an "enforcement initiative," that a sale of that bank was denied regulatory approval by a local regulator, and that the bank was closed by a regulator. SAC, Factual Allegations, ¶ 1. Plaintiff also alleges that he was harmed by a press conference regarding the investigation and closure. SAC, Factual Allegations, ¶ 4. These alleged actions are inherently sovereign in nature; private citizens cannot conduct enforcement initiatives, grant or deny regulatory approval, forcibly close banks through their regulatory powers, or give press conferences related to carrying out those actions. Accordingly, Plaintiff's claims do not fall within the FSIA's commercial activities exception.[9]

*Ivanenko v. Yanukovich* is instructive. There, the Plaintiffs' complaint alleged that the Ukrainian government expropriated the plaintiffs' business and property in Ukraine to convert it into a commercial sports facility run by an official's relatives. 995 F.3d at 239. The U.S. Court of Appeals for the District of Columbia Circuit affirmed that the allegations set forth in the complaint, taken as true, failed to support the application of any exceptions to sovereign immunity under the FSIA, including the "commercial activities" exception. *See id.* The court explained that expropriation of property is "quintessentially sovereign" and cannot support the application of the

---

[9] The cases relied on by Plaintiff in his other filings are not to the contrary; instead, they involve conduct that, by its nature, can be engaged in by private citizens, such as contracting for asset collection services (*Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 727 F.3d 10, 21 (1st Cir. 2013)), determining whether to carry worker's compensation insurance for employees (*Merlini v. Canada*, 926 F.3d 21, 33-34 (1st Cir. 2019)), and issuing debt instruments (*Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 615 (1992)). Hence, the allegations here, what amount in essence to expropriation of property, if true, cannot be engaged in by private citizens.

"commercial activities" exception, and the sovereign's "motives and its subsequent use of appellants' property do not alter the analysis." *Id.* The same is true here.

      2.      *The noncommercial tort exception does not apply, as Plaintiff's claims arise from discretionary functions and sound in malicious prosecution, libel, and interference with contract rights*

Section 1605(a)(5) of the FSIA sets forth what is sometimes called the "noncommercial tort" exception. The exception was originally created by Congress to primarily address traffic accidents and other such torts and is to be narrowly construed "as not to encompass the farthest reaches of common law." *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987). The exception to sovereign immunity allows actions for money damages for personal injury, death, damages, or loss of property resulting from tortious acts of a foreign official or employee <u>unless</u> the claim (1) is based upon the exercise of any discretionary function, regardless of whether it is abused, or (2) arises out of malicious prosecution, libel, misrepresentation, deceit, or interference with contract rights. 28 U.S.C. § 1605(a)(5). Plaintiff's claims fall under both "exceptions to the exception" of Section 1605(a)(5) and thus do not fall within the "noncommercial tort" exception to the immunity codified in the FSIA.

Plaintiff asserts four claims against Mr. Day in the SAC that sound in tort: (1) a § 1985(3) civil rights conspiracy claim relating to the bank closure and press conference (Count II); (2) tortious interference with business relations related to the bank stock sale (Count IV); (3) defamation related to statements "falsely implying criminal wrongdoing" made by IRS officials at the June 2022 press conference (Count V); and (4) a *Bivens*-style claim via their alleged conspiracy to deprive him of due process (Count VI). Each of these claims relies on false statements, misrepresentations, interference with contract rights, or abuse of process; Plaintiff's claims, as

pled, remove the suit from the FSIA's "noncommercial tort" exception under § 1605(a)(5).[10]  *See*
Counts II, IV-VI; 28 U.S.C. § 1605(a)(5); *see Afrasiabi v. Gov't of Islamic Republic of Iran*, No.
24-10451-MJJ, 2025 U.S. Dist. LEXIS 53163, at *15 (D. Mass. Mar. 11, 2025), *appeal docketed*,
No. 25-1274 (1st Cir. Mar. 19, 2025) ("Given that Mr. Afrasiabi's claims against the Mission all
arise out of the Mission's alleged misrepresentation regarding the legality of his consulting role,
§ 1605(a)(5)(B) applies and bars the torts exception from giving this Court jurisdiction.");
*Khochinsky v. Republic of Poland*, 1 F.4th 1, 11 (D.C. Cir. 2021) (finding that claims that arise
from the same corpus of allegations as the alleged abuse of process fall within §1605(a)(5)(B)).[11]

Plaintiff's claims also fall with the so-called "discretionary function" "exception to the
exception."  Section 1605(a)(5)(A).  The discretionary function limitation is modeled on a similar
exception to jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 2680(a) ("FTCA"); courts
borrow the FTCA's two-part test to determine when an action is discretionary under
§ 1605(a)(5)(A).  *Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 8-9 (1st Cir. 2002).  The first
prong of the test looks at whether there is any "matter of choice for the acting employee." *Berkovitz*
*v. United States*, 486 U.S. 531, 536 (1988).  If the employee is required to act a certain way by
law, there is no discretion.  *Id.*  Second, if the act is discretionary, the act must be of the type that

---

[10] Plaintiff's filings conflate this carve-out with the "discretionary function" carve-out
detailed below, suggesting that any "exception to the exception" requires a discretionary function.
*See* Pl.'s Opp. to Mr. Ferron's Mot. to Dismiss at 4, ECF No. 138; Pl.'s Opp. to Mr. York's Mot.
to Dismiss at 12, ECF No. 145.  However, the plain text of the statute states that the "non-
commercial tort" exception "shall not apply to" claims based on exercises of discretion *or* claims
"arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit,
or interference with contract rights."  28 U.S.C. § 1605(a)(5) (emphasis added).

[11] While Plaintiff does not allege the existence of a contract, under Puerto Rico law, tortious
interference with business relations (Count IV) requires an underlying contract.  *See Futura Dev.*
*of P.R., Inc. v. Estado Libre Asociado de P.R.*, 276 F. Supp. 2d 228, 242 (D.P.R. 2003); section
II.D., *infra*.  A claim for tortious interference thus squarely falls under "interference with contract
rights."  *See* §1605(a)(5)(B).

the discretionary function exception was designed to shield, to prevent judicial second guessing of legislative or administrative policy choices. *Id.; United States v. S.A. Empresa de Viação Aérea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984); *Rodriguez,* 297 F.3d at 8-9. The shield extends even to abuses of that discretionary authority. *Id.* at 10. To determine if the law intended to shield the discretionary function at issue, courts look to "whether some plausible policy justification could have undergirded the challenged conduct." *Id.* at 11 (internal quotation omitted). On their face, and without admitting the truth of any of Plaintiff's allegations, Plaintiff's claims rest on what would necessarily be discretionary, policy-based choices made by government officials in their judgment investigating and pursuing tax and financial crimes.

## II.    Plaintiff fails to state a claim under each of the four causes of action

### A.    Legal standard under Rule 12(b)(6)

Defendant Eric Ferron sets forth the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in his Motion to Dismiss Amended Complaint at 12-13, ECF No. 129. To avoid burdening this Court with repetitive papers, Mr. Day (and Australia) adopt this recitation of law by reference under Local Rule 7(f).

### B.    Section 1985(3) does not apply to foreign sovereigns

Section 1985(3) allows for monetary damage suits where a plaintiff can establish a conspiracy between two or more persons. 42 U.S.C. § 1985(3) ("If two or more *persons* in any State or Territory conspire…") (emphasis added). The D.C. Circuit, following a thorough analysis of legislative history, context, and judicial precedent, has held that a foreign government is not a "person" under Section 1985. *Sturdza v. U.A.E.*, 281 F.3d 1287, 1306-07 (D.C. Cir. 2002). The Supreme Court has consistently held that sovereign governments are excluded from the word "person" in statutes without affirmative evidence of intent to include such entities, and it has held

14

that a foreign government is not a "person" in Section 1983, which is often interpreted consistently with Section 1985. *Id.*; *see Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000) (collecting cases); *Breard v. Greene*, 523 U.S. 371, 378 (1998). As discussed *supra*, the real party in interest is Australia, which cannot be sued as a "person" under 42 U.S.C. § 1985(3).

> **C.    Plaintiff fails to state a claim under 42 U.S.C. § 1985(3) because he fails to identify any membership in a protected class, discriminatory animus, or any facts indicating any agreement among coconspirators**

Defendant Ferron succinctly captures the relevant law and facts with respect to Plaintiff's failure to identify membership in a protected class that is fatal to his conspiracy claim under § 1985(3), and Australia incorporates that discussion in his Motion to Dismiss Amended Complaint at 15-17, ECF No. 129, by reference pursuant to Loc. R. 7(f). Plaintiff also fails to allege any facts that Mr. Day (or Australia) participated in any conspiracy and instead relies on general, conclusory statements as to the J5 that preclude Mr. Day from discerning the alleged acts of which he is accused. *See* Ferron Mot. to Dismiss at 17-18, ECF No. 129. Because Mr. Day and Mr. Ferron are similarly situated vis-à-vis Plaintiff's reliance on general conclusory allegations as to the J5, Mr. Day incorporates by reference Mr. Ferron's brief on this point, Motion to Dismiss Amended Complaint at 17-18, ECF No. 129, under Loc. R. 7(f).

Plaintiff does make a solitary reference to Mr. Day in his discussion of the July 1, 2022, email, but it does not advance Plaintiff's cause of action. This email provides no support for any inference that Mr. Day agreed to any conspiracy to deprive Plaintiff of his civil rights, nor does it show any act in furtherance of any conspiracy. As pleaded by Plaintiff, it is merely an email "congratulating the IRS for 'negotiating today's outcome with OCIF.'" SAC, Intro., para. 3. At

most, Plaintiff alleges the various Defendants worked together under the "joint J5 enforcement initiative." *See* SAC, Factual Allegations, ¶ 1.

*Alston v. Spiegel*, 988 F.3d 564, 577-78 (1st Cir. 2021), is instructive. There, the First Circuit Court of Appeals affirmed the dismissal of a claim under § 1985(3), finding that the complaint, which alleged that two people distributed the same "letter to the editor" attacking the plaintiff's credibility, with one person referring to the other repeatedly, lacked the requisite factual allegations to support a conspiracy claim. The court explained that

> [w]here, as here, a complaint aspires to allege a conspiracy in violation of section 1985(3), it must elaborate or substantiate any bald claims that certain defendants conspired with one another…. Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss.

988 F.3d 564, 578 (1st Cir. 2021) (internal modifications, quotation marks, and citations omitted). The court went on to state that "[a] pleader is entitled to have reasonable inferences drawn in his favor, but he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts." *Id.* The same is true here. Plaintiff has not alleged any facts whatsoever from which a plausible inference of a conspiracy to deprive Plaintiff of his civil rights can be drawn.

Finally, Plaintiff does not assert any deprivation of *equal protection* to support a § 1985(3) claim. Plaintiff appears to assert a conspiracy to violate his due process rights and reputational harm. SAC, Count II. Due process claims cannot support a § 1985(3) claim. *Dunn v. Gazzola*, 216 F.2d 709, 711-12 (1st Cir. 1954). Nor does defamation support a § 1985(3) claim. *See White v. United States*, 791 F. Supp. 2d 156, 163 (D.D.C. 2011); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 355 (D.N.J. 2015) (collecting cases).

**D.    Plaintiff also fails to state a claim as to the newly pled causes of action of tortious interference with business relations, defamation, and violation of civil rights under *Bivens v. Six Unknown Named Agents***

        *1.    Plaintiff fails to allege the existence of a contract*

Because the law and facts are identical as to Mr. Day and Mr. Ferron, Plaintiff incorporates by reference under Loc. R. 7(f) the arguments made in Mr. Ferron's brief, Motion to Dismiss Amended Complaint at 21-24, ECF No. 129.  Not only did Plaintiff fail to allege any underlying contract as is required to maintain the cause of action, but Plaintiff fails to allege any knowledge of or interference with the contract by Mr. Day (or Australia).  Consequently, Plaintiff's claim against Mr. Day should also be dismissed for failure to state a claim.

        *2.    Plaintiff fails to state a claim for defamation as Plaintiff asserts only Mr. Lee made allegedly defamatory statements*

The legal principles and many of the facts related to this claim are not defendant specific. Therefore, Mr. Day incorporates by reference under Loc. R. 7(f) the arguments made by Mr. Ferron, Motion to Dismiss Amended Complaint at 18-21, ECF No. 129.  As he did with Mr. Ferron, Plaintiff fails to allege Mr. Day made any defamatory comments or innuendo, and admits that statements at issue from the June 30, 2022, press conference were made exclusively by Mr. Lee.  *See* SAC, Count V, second bullet, at 5; Ferron Mot. to Dismiss at 18-19.  Mr. Ferron pointed out that Plaintiff cannot rely on "group" pleading to assert a claim.  *See* Ferron Mot. to Dismiss at 20.  Plaintiff has not, and cannot, assert a defamation conspiracy because he has alleged no facts supporting any agreement or "meeting of the minds" to defame him.  *See Lewis v. Abramson*, 673 F. Supp. 3d 72, 85 (D.N.H. 2023).

3.    *Bivens actions are limited to U.S. federal officials and the Court must decline to extend Bivens to new causes of action*

Plaintiff's *Bivens* claim in Count VI is asserted against the J5 as a whole; thus, Mr. Day incorporates by reference under Loc. R. 7(f) Mr. Ferron's statement of the law and factual analysis explaining why Plaintiff fails to state a claim, found at Motion to Dismiss Amended Complaint at 26-27, ECF No. 129. Like Mr. Ferron, Mr. Day is not a U.S. federal officer, and he is, and at all relevant times has been, an officer and representative of the Government of Australia. The SAC lacks any allegation that Mr. Day, in his individual capacity, violated any of Plaintiff's constitutional rights.

In addition, the Supreme Court has warned against extending implied causes of action under *Bivens*, instead finding that such law-making should be reserved for Congress. *Egbert v. Boule*, 596 U.S. 482, 496 (2022) (finding that "if there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy") (internal quotations omitted). Courts may not find a new *Bivens*-style cause of action where alternative remedial structures exist. *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017). Here, Plaintiff's other causes of action based on the same conduct and injury suggest that other remedial structures already exist to address the underlying injury (although not against Mr. Day).

**E.    Plaintiff's claims are barred by the statute of limitations**

Statute of limitation defenses may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) where the facts underlying the defense are clear on the face of the pleading. *See Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either different statute of limitations period or equitable estoppel, dismissal is appropriate." *Id.*

18

Mr. Ferron's brief sets out the relevant law with regard to the statute of limitations and the relevant facts are identical between Mr. Ferron and Mr. Day, and Mr. Day adopts Mr. Ferron's brief for these purposes under Loc. R. 7(f), Motion to Dismiss Amended Complaint at 24-26, ECF No. 129. *See also Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir. 1987) (statute of limitations applicable to civil rights claims brought in federal district court is the state statute of limitations for tort actions); *Roman v. Townsend*, 224 F.3d 24, 29 (1st Cir. 2000) (noting the "settled proposition" that *Bivens* actions are subject to Puerto Rico's one-year statute of limitations period).

Plaintiff appears to recognize his claims would be barred by the statute of limitations but argues the statute of limitations is tolled due to Defendant's "fraudulent concealment" of key evidence. SAC, Factual Allegations, ¶ 6.

Plaintiff cannot rely on "fraudulent concealment" to toll his claim. Puerto Rico law provides for equitable tolling in a case of "damage willfully and wrongfully (*dolosamente*) concealed by the author of the same." *Rivera Encarnacion v. E.L.A.*, 113 P.R. Dec. 383, 386 (1982); *see also Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir. 1987) (applying equitable tolling to allegations of fraudulent concealment to § 1983 and § 1985 civil rights claims). However, allegations of fraudulent concealment must be pleaded with particularity under Fed. R. Civ. P. 9(b). *Vistamar, Inc. v. Fagundo Fagundo*, No. 03-1188 (JAF), 2005 U.S. Dist. LEXIS 57440, at * 9 (D.P.R. Mar. 14, 2005). This means a plaintiff must plead "the time, place, and content of the alleged false or fraudulent representations." *Stein Seijo v. Ben R. Miller, Inc.*, 526 F. Supp. 2d 191, 195 n.4 (D.P.R. 2007) (internal quotation marks and citations omitted).

Plaintiff fails to plead fraudulent concealment with particularity. He includes no specific facts regarding the timing, location, or content of any false statements or fraudulent

19

misrepresentations supporting wrongful concealment.  Moreover, the crux of Plaintiff's claims is alleged damage that resulted from public acts conducted by Defendants, and in particular the June 30, 2022, press conference that was "widely reported by the defendant media, damaging Plaintiff's reputation and business."  SAC, Factual Allegations, ¶ 2.

### III.    Plaintiff did not properly serve Australia

"[O]nce challenged, plaintiffs have the burden of proving proper service."  *Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992).  As Australia is the real party in interest, service of process must be effectuated in accordance with hierarchical methods of service in Section 1608 of the FSIA.  28 U.S.C. § 1608; *Republic of Sudan v. Harrison*, 587 U.S. 1, 4-5 (2019).[12]  Under this section, parties must effectuate service "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2).  The Supreme Court has held that, when a foreign state is the defendant, actual notice and substantial compliance with the FSIA's service provisions are not sufficient; strict compliance is required.  *See Republic of Sudan*, 587 U.S. at 19.  Australia is a signatory of the Hague Service Convention, and thus the procedure set out by the Convention preempts all inconsistent methods of service prescribed by state law.  Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 1, Nov. 15, 1965 (hereinafter the "Hague Convention").

Pursuant to Australia's internal law on service of Australia and Australian states, Section 63 of the Judiciary Act 1903 (Cth), "Where [Australia] or a State is a Party to a suit, all process in the suit required to be served upon that party shall be served upon the Attorney – General of

---

[12] There is no special arrangement between Plaintiff and Australia and thus the first method of service is inapplicable.  *See* 28 U.S.C. § 1608(a)(1).

[Australia] or of the State, as the case may be, or upon some person appointed by him or her to receive service."

Plaintiff attempted personal service on Mr. Day in his official capacity via a private process server and left the summons and complaint with "Karen, female employee of the ATO." Pl.'s Mot.: Served Defs. 1-2, ECF No. 99-1. Neither Mr. Day nor "Karen, female employee of the ATO" were authorized to accept service on behalf of Australia. Plaintiff did not serve the Attorney-General of Australia. Consequently, Plaintiff has not properly served Australia. And because the FAC was not properly served under FRCP 4, there was no service of the SAC under FRCP 5. *Parlon v. United States Dep't of Homeland Sec.*, No. 24-10886-BEM, 2025 U.S. Dist. LEXIS 21499, at \*4 (D. Mass. Feb. 6, 2025) (finding Rule 4 governed the service of the amended complaint instead of Rule 5 where the original complaint was not properly served).

As this Court has indicated that all that foreign defendants must be served with the FAC by June 2, 2025, and that no further extension will be granted (*see* Order at 3, ECF No. 89), Australia respectfully requests the Court dismiss the action as to Mr. Day from the action with prejudice for failure to serve the FAC on the Attorney General of Australia, as required by Australian law.

## CONCLUSION

This case requires a straightforward application of the foreign sovereign immunity doctrine and mandates prompt dismissal with prejudice of the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(2). Despite two amendments to his original complaint, Plaintiff has failed to allege a single fact that even hints at the possible application to any exception to the Foreign Sovereign Immunities Act or that Plaintiff's claims are anything but challenges to official, discretionary actions of Australia. Moreover, as set forth above, and as also addressed in several

21

other motions to dismiss, Plaintiff's Second Amended Complaint fails to state a claim in the first instance and is subject to dismissal pursuant to Rule 12(b)(6).  Plaintiff's suit also must be dismissed pursuant to Rules 12(b)(1) and 12(b)(5) due to the failure to properly serve Australia as the real party in interest.  Mr. Day, and Australia, are not subject to suit in the United States, and they respectfully request that this Court promptly end this futile litigation against them.

In San Juan, Puerto Rico, this 25th day of July, 2025.

**RESPECTFULLY SUBMITTED,**

BAKER & MILLER PLLC

_____

W. Todd Miller (admitted *pro hac vice*)
1325 Pennsylvania Ave., N.W., Suite 700
Washington, D.C. 20004
Telephone: (202) 663-7822
Facsimile: (202) 663-7849
tmiller@bakerandmiller.com


REICHARD & ESCALERA, LLC
Rafael Escalera Rodríguez (USDC PR 122609)
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, Puerto Rico 00917-1913
Telephone: (787) 777-8877
Facsimile: (787) 765-4225
escalera@reichardescalera.com

*Counsel for Defendant, Mr. Will Day, and for the Government of the Commonwealth of Australia as the real party in interest*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants in the above-named case.

BAKER & MILLER PLLC

_____

W. Todd Miller (admitted *pro hac vice*)
1325 Pennsylvania Ave., N.W., Suite 700
Washington, D.C. 20004
Telephone: (202) 663-7822
Facsimile: (202) 663-7849
tmiller@bakerandmiller.com

*Counsel for Defendant, Mr. Will Day, and for the Government of the Commonwealth of Australia as the real party in interest*