## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

PETER DAVID SCHIFF,

    Plaintiff,

    v.

INTERNAL REVENUE SERVICE (IRS), *et al.*,

    Defendants.

Case No. 3:24-cv-01511 (CVR)

## MOTION TO DISMISS SECOND AMENDED COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

**COME NOW**, The New York Times Company ("The Times") and Matthew Goldstein[1] (collectively, "The Times Defendants"), through the undersigned counsel, and respectfully move for the Court to enter judgment under FED. R. CIV. P. 12(b)(6) dismissing with prejudice any claims against them in the Second Amended Complaint by plaintiff Peter D. Schiff ("Plaintiff") for failure to state a claim upon which relief may be granted, for the following reasons:

## I.    INTRODUCTION

As to The Times Defendants (which are among many individuals and entities sued in this case), Plaintiff's grievance concerns news reporting published in October 2020 and June 2022 about a government investigation into Plaintiff's bank and a press conference regarding that investigation. Plaintiff does not allege that The Times Defendants misstated in their news article what the officials said at that press conference, nor does he otherwise specify what in the article was supposedly false. But he claims that, because The Times Defendants and others "widely

---

[1] The Second Amended Complaint incorrectly spells the co-defendant's name as "Mathew Goldstein" instead of the correct "Matthew Goldstein."

1

reported" statements made at the press conference, he suffered unspecific reputational and financial harm. *See* ECF No. 121, at 3, ¶ 2.

On the basis of these threadbare and conclusory allegations, Plaintiff asserts three claims against The Times Defendants.[2] These are: (*i*) an alleged "conspiracy to violate civil rights" under 42 U.S.C. § 1985(3);[3] (*ii*) defamation,[4] and (*iii*) tortious interference with "business relations."[5] Even if, however, Plaintiff's allegations were taken to be true, these causes of action, two of which are little more than disguised claims for libel or defamation, fail to support a claim upon which relief could be granted and should be dismissed with prejudice.

First, Plaintiff's Section 1985 and tortious interference claims should be treated as a libel or defamation claim that fails on numerous fronts. The claim is clearly time-barred. Despite Puerto Rico's one-year statute of limitations, Plaintiff brings claims over stories published in 2020 and 2022. The Second Amended Complaint also fails to plead, as a plaintiff is required to do, the specific statements alleged to be defamatory content and in what way any statement is false.

---

[2] Previously, the only claim that Plaintiff attempted to assert against The Times Defendants was one under Section 1985(3). In requesting dismissal, The Times Defendants argued that Plaintiff's Section 1985 claim should be treated as a defamation claim. ECF No. 58, at 2. In response, Plaintiff accused The Times Defendants of "misconstru[ing] the facts" and stated that "this is not a defamation suit." ECF No. 65, at 2. Counts IV and V of the Second Amended Complaint, however, now assert defamation and tortious interference claims. ECF No. 121, at 5-6. This proves that The Times Defendants were right: Plaintiff's Section 1985(3) claim is an inadequately pleaded defamation claim in disguise. Furthermore, like its previous versions, the Second Amended Complaint does not even purport to state claims against The Times Defendants under 42 U.S.C. § 1983 or under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). For example, Count VI of the Second Amended Complaint is alleged against "All Defendants" (ECF No. 121, at 6) and Counts I and III are alleged against specific defendants, "and others" (*Id.*, at 4-5), but as to those causes of actions, the Second Amended Complaint contains no allegations against The Times Defendants. The Court should not interpret the perfunctory and vague references to "All Defendants" or "and others" to include The Times Defendants. *See U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). The point is worth emphasizing because of the confusing and legally deficient way the Second Amended Complaint is drafted. *See e.g. Bagheri v. Galligan,* 160 F. App'x 4, 5 (1st Cir. 2005) (affirming dismissal where complaint "failed to state clearly which defendant or defendants committed each of the alleged wrongful acts."); *Redondo-Borges v. U.S. Dept. of Housing and Urban Dev't*, 421 F.3d 1, 9 (1st Cir. 2005) (explaining that "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why. . . .") (quotation omitted).

[3] Second Amended Complaint, Count II, ECF No. 121, at 5.

[4] Second Amended Complaint, Count V, ECF No. 121, at 5-6.

[5] Second Amended Complaint, Count IV, ECF No. 121, at 5.

Moreover, Plaintiff does not provide any factual basis to establish that The Times Defendants acted with negligence. The mere assertion that the allegations were "unsubstantiated" does not meet the standard for negligence, particularly where The Times Defendants were simply reporting on a government investigation and statements by government officials at a press conference. Finally, and significantly, the Times Defendants' reports were based on statements made by government officials and are therefore protected by the fair and true report privilege.

Second, even if the Court treats Plaintiff's Section 1985 and tortious interference claims as properly pleaded, these claims are also time-barred. The statute of limitations applicable to actions under Section 1985 and for tortious interference is based on Puerto Rico's general tort statute, which provides a one-year limitations period. The articles at issue here were published in October 2020 and June 2022–well before Plaintiff filed this action in November 2024. The claims should be dismissed with prejudice on this ground alone.

Third, Plaintiff's Section 1985(3) conspiracy claim is based on conclusory allegations that The Times Defendants conspired with the other defendants (government officials and other media outlets) for the purpose of harming his business and reputation. ECF No. 121, at 5. These vague and speculative allegations do not meet the required legal standard for a plausible conspiracy claim under Section 1985(3), which demands specific factual allegations of an unlawful agreement, that Plaintiff is a member of a protected class, and a discriminatory animus.

Fourth, Plaintiff's tortious interference claim is based on conclusory allegations that The Times Defendants "unlawfully interfered" with his "business, leading to the loss of a $17.5 million sale to Qenta in 2022." *Id.* at 5. But Plaintiff fails to allege that he had a contract for a fixed period with some third party, that The Times's stories caused the loss of that contract (as opposed to the serious allegations from government investigators reported in the stories), and that Plaintiff suffered damages due to that alleged interference. The one "contract" mentioned in the complaint

3

–the sale of plaintiff's bank– was blocked by the Office of the Commissioner of Financial Institutions of Puerto Rico (OCIF), "allegedly at IRS/J5's request," on May 16, 2022, long after The Times's first story and before The Times's second story. *Id.* at 3, ¶ 3. Even if The Times's reporting had some effect on the sale, the courts have been clear that when journalists provide news of public interest to the public, such activity is protected legal activity and not tortious.

Fifth, and finally, the judgment dismissing this case should be entered with prejudice. The Complaint has already been amended twice, and it is clear that any attempt to avoid dismissal by amending once again would be futile.

## II.    BACKGROUND

The Times published the two articles that are at issue here, the first one titled *Chasing Illicit Money, Global Officials Circle a Puerto Rican Firm*, and published on October 19, 2020 (the "First Article"), and the second one titled *Regulator in Puerto Rico suspends operations of Euro Pacific Bank*, and published on June 30, 2022 (the "Second Article," and jointly with the First Article, the "Articles"). *See* **Exhibit A** and **Exhibit B**.[6] Mr. Goldstein co-authored the First Article (with reporter Damien Cave, not a defendant here) and solely authored the Second Article.[7]

The First Article reported that tax authorities from the United States, Australia, Britain, Canada, and the Netherlands joined forces to investigate Euro Pacific Bank, founded by Plaintiff,[8]

---

[6] Copies of the Articles are attached hereto, respectively, as **Exhibit A** (Matthew Goldstein, *Regulator in Puerto Rico suspends operations of Euro Pacific Bank*, N.Y. TIMES, June 30, 2022; https://www.nytimes.com/2022/06/30/business/puerto-rico-euro-pacific-bank.html), and **Exhibit B** (Matthew Goldstein and Damien Cave, *Chasing Illicit Money, Global Officials Circle a Puerto Rican Firm*, N.Y. TIMES, October 19, 2020; https://www.nytimes.com/2020/10/19/business/puerto-rico-euro-pacific-investigation.html?searchResultPosition=1). Because the Complaint makes explicit and repeated reference to the Articles, they can and should be deemed to be incorporated in the pleadings, such that the Court may consider them in ruling on this motion under Rule 12(b)(6).

[7] Plaintiff fails to detail the precise content of the allegedly defamatory statements in question, and it is not clear whether he takes issue with the First Article or the Second Article in this lawsuit. The Times Defendants assume, for the purposes of this motion, that Plaintiffs intends to challenge both Articles—though in both cases, as argued below, he has no viable claim.

[8] The First Article further clarified that "Mr. Schiff founded Euro Pacific in 2011 in the lush Caribbean outpost of St.

in Puerto Rico for its potential role in facilitating illegal financial transactions. *See* **Exhibt A**. The investigation, known as "Operation Atlantis," focused on whether the bank helped clients "move money illegally" and on its connections to individuals "accused or suspected of tax evasion and money laundering." *Id.* The First Articles notes that "[n]either Euro Pacific Bank nor its personnel have been charged with wrongdoing." *Id.* Plaintiff seems to allege that government officials conspired with The Times Defendants (and other news outlets) to leak information about the investigation mentioned in the First Article. *See* ECF No. 121, at 4, ¶4. Plaintiff does not, however, provide any factual allegation to support his claim.

The Second Article was published after a press conference was held on June 30, 2022, by government officials, including OCIF, regarding the investigation into the Euro Pacific Bank. *See* **Exhibit B**. It quotes a statement from an OCIF official noting that "Euro Pacific has a long history of noncompliance." *Id.* It further notes that OCIF issued a "cease-and-desist order" against the Euro Pacific Bank for "inadequate capital levels and compliance controls." *Id.* The Second Article conveyed Plaintiff's comment on the announcement of the investigation, including that he "expressed 'surprise' at the decision by the bank regulator" and that "[it]'makes no sense' because 'the bank has done nothing wrong.'" *Id.* Plaintiff asserts that "wide[] publish[ing]" of the press conference by news media, including The Times Defendants, caused him reputational harm. But once again his allegations are threadbare: he provides no details of the harm he suffered, nor does he ever identify which statements, if any, by The Times Defendants were supposedly libelous or defamatory.

---

Vincent and the Grenadines. He promoted it as an alternative to the established banking system. In one 2011 interview, he promised to issue debit cards backed by individual holdings of gold and silver. In another, from 2014, he said that he had chosen St. Vincent because 'you have secrecy, privacy, and you have no tax.'"

## III.    STANDARD FOR MOTION TO DISMISS

Under FED. R. CIV. P. 12(b)(6), a complaint must be dismissed unless it includes factual allegations that, when taken as true, demonstrate a plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007). Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller*, 616 F.3d 60, 65 (1st Cir. 2010) (citations omitted). Plausibility exists when the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged. *See Morales-Cruz v. Univ. of P.R.*, 676 F. 3d 221, 224 (1st Cir. 2012); *Sepúlveda-Villarini v. Dept. of Educ. of P.R.*, 628 F. 3d 25, 30 (1st Cir. 2010). If the well-pleaded facts do not allow a "court to infer more than the mere possibility of misconduct, the complaint has . . . not show[n] . . . that the pleader is entitled to relief." *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (citations omitted).

While a court must accept the facts alleged in the complaint for purposes of a Rule 12(b)(6) motion, mere "conclusory allegations" need not be accepted. Courts will not accept conclusory allegations regarding "the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened." *Martínez-Machicote v. Ramos-Rodríguez*, 553 F. Supp. 2d 45, 49 (D.P.R. 2007) (citations omitted). Courts accept all well-pleaded factual allegations as true and indulge all reasonable inferences in plaintiff's favor, but need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F3d 1, 3 (1st Cir. 1996); *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, when ruling on a Rule 12(b)(6) motion, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d

1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (internal citations omitted). Then, the Court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor" to "see if they plausibly narrate a claim for relief." *Zenón v. Guzmán*, 924 F.3d 611, 615-616 (1st Cir. 2019). *See also García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013); *Morales-Cruz*, 676 F.3d at 224.

Furthermore, the Court may only consider material that is part of or otherwise incorporated into the complaint. Thus, in addition to the allegations, courts may also consider a limited category of documents outside the four corners of the complaint without converting the motion into one for summary judgment. These include public records, documents the authenticity of which is not disputed by the parties, and most pertinent for this case, documents sufficiently referred to in the complaint or otherwise central to the plaintiff's claim–that is, the Articles. *See Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 47 n.1 (1st Cir. 2009) (nothing that, "[w]hile we ordinarily do not consider materials that are outside the complaint when reviewing a motion to dismiss under Rule 12(b)(6), we make 'narrow exceptions for . . . documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'") (citation omitted); *Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) (noting that "[i]nasmuch as this is an appeal from an order of dismissal for failure to state a claim upon which relief can be granted, . . . [w]e may supplement . . . factual allegations by examining 'documents incorporated by reference into the complaint. . . .'") (citation omitted).

## IV.    ARGUMENTS FOR DISMISSAL

### A.  The claims against The Times Defendants must be treated as a defamation claim, sounding in tort, because it is based on alleged reputational harm.

Plaintiff's claims against The Times Defendants are clearly premised on reputational harm and must, therefore, be treated as one for defamation. *See* Docket No. 10, p.5, ¶5. In Puerto Rico, protections against reputational harm are to be found in Article II, Section 8 of the Constitution of Puerto Rico, Article 1536 of the Puerto Rico Civil Code, and Puerto Rico's Libel and Slander Act, P.R. LAWS ANN. Tit. 32 § 3141. *See Meléndez Vega v. El Vocero de PR*, 189 D.P.R. 123, 147 (2013). A complaint that alleges reputational injury from speech must meet the statutory and constitutional requirements that apply to defamation claims. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348-349 (1974); *see, e.g., Goldman v. Barrett*, 733 F. App'x 568, 570 (2nd Cir. 2018) (summary order) (noting that "New York courts treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate torts as additional causes of action.").

Therefore, Plaintiff cannot recast a claim that sounds in defamation into one for conspiracy to violate his civil rights merely by injecting conclusory allegations of a "conspiracy" into his pleading. *See Faller v. Beasley Broad. Grp., Inc.*, No. 2:24-CV-606-SPC-KCD, 2025 WL 589231, at *2 (M.D. Fla. Feb. 24, 2025) (finding that section 1985(3) claim alleging that defendants "publish[ed] false information and refus[ed] to correct it" was "nothing more than [a] defamation claim recast under a federal statute," and dismissing claim); *see also Barr v. Clinton*, 370 F.3d 1196, 1203 (D.C. Cir. 2004) (applying First Amendment protections to section 1985 claims because "ruling otherwise would allow public officials to recast defamation claims barred by [*New York Times v. Sullivan*, 376 U.S. 254 (1964)] as section 1985(1) conspiracies, thus choking off the 'breathing space' necessary to safeguard 'the freedoms protected by the First Amendment'").

And neither can Plaintiff recast a claim that sounds in defamation into one for tortious interference merely by injecting into his pleading conclusory allegations of interference with prospective "business relations." *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (noting that "[t]he Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits. . . ."); *Goldman*, 733 F. App'x at 571 (rejecting plaintiffs arguments that defendants' "purported intention to damage their business operations in Asia can support a stand-alone claim . . ." because "[t]hese converging claims are premised on identical underlying factual content: . . . alleged statements to Plaintiffs' potential business partners," and affirming dismissal of plaintiffs' tortious interference claim "as duplicative of the defamation claim because any economic damages derive from defamatory statements"); *Farah v. Esquire Magazine,* 736 F.3d 528, 540 (D.C. Cir. 2013) (holding that because plaintiffs' "defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech," and that "[a] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim.") (citations omitted).[9]

Plaintiff's Section 1985 and tortious interference claims against The Times Defendants are just a defamation claim. Specifically, Plaintiff claims that a June 2022 press conference in Puerto Rico "with IRS, J5, and OCIF representatives" and that "announced the investigation and closure of the bank, falsely implying illegal activity . . . was widely reported by the defendant media,

---

[9] Several other Federal Courts have reached similar conclusions. *See e.g. Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 856–58 (10th Cir. 1999) (affirming dismissal of "state law claims for intentional interference with contract and for intentional interference with prospective business relations" because, among other things, the allegations of tortious interference were "based on a statement of opinion protected by the First Amendment"); *Beverly Hills Foodland Inc. v. United Food & Commercial Workers Union, Local 655,* 39 F.3d 191, 196–97 (8th Cir. 1994); *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1057–58 (9th Cir. 1990); *cf. Delloma v. Consol. Coal Co.,* 996 F.2d 168, 172 (7th Cir.1993) (noting the "significant First Amendment problems" that would be raised by "permitting recovery for tortious interference based on truthful statements"); *Hill v. Allianz Life Ins. Co. of N. Am.,* No. 614CV950ORL41KRS, 2016 WL 872936, at *8 (M.D. Fla. Feb. 17, 2016), *aff'd,* 693 F. App'x 855 (11th Cir. 2017) (concluding that "Plaintiff's tortious interference claim is based on the same publication and underlying facts as his defamation claim" and, therefore, "Plaintiff's tortious interference claim runs afoul of the single publication/single action rule and is due to be dismissed."). The Puerto Rico Supreme Court adopted the single publication rule in 1977. *See Díaz Segarra v. El Vocero,* 5 P.R. Offic. Trans. 1182, 105 D.P.R. 850, 852 (1977).

damaging Plaintiff's reputation and business." ECF No. 121, at 3, ¶2. He further alleges that The Times "published damaging and unsubstantiated allegations of tax evasion and money laundering, regarding Plaintiff and the bank, despite knowing these claims were unsubstantiated." *Id.* at 4, ¶4; *see also Id.* at 5-6.

### i.   Plaintiff's claim against The Times Defendants is time-barred.

The Supreme Court of Puerto Rico has consistently held that defamation claims are subject to the one-year statute of limitations applicable to regular tort actions. *See Ojeda-Ojeda v. El Vocero,* 137 D.P.R. 315, 326, 37 P.R. Offic. Trans. 12 (1994) (holding that defamation claims arising from Puerto Rico's Libel and Slander Act, P.R. LAWS ANN. tit. 32 at § 3141 and Article 1802 of the Civil Code,[10] are subject to a one-year statute of limitations); *Cacho-González v. Santarrosa*, 203 D.P.R. 215, 228 (2019) (noting that "the action for libel or slander and for the obligations derived from the fault or negligence referred to in Article 1802, *supra,* prescribes one year from the time the aggrieved party knew about it.") (our translation); *Hernández v. Colegio y Noviciado Santa María Del Camino, Inc.,* No. Civ. 12-2052 PAD, 2015 WL 1416684 (D.P.R. Mar. 27, 2015) ("Defamation claims are subject to the one-year statute of limitations set for tort actions by Article 1868 of the Civil Code [of 1930]);[11] *see also,* P.R. LAWS ANN. tit. 31 § 9496.

The one-year period begins to accrue when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor. *See Colón Pérez v. Televicentro de P.R.,* 175 D.P.R. 690, 713-714 (2009)*; Tokyo Marine & Fire Ins. Co. v. Perez & Cía. de Puerto Rico, Inc.,* 142 F.3d 1, 3 (1st Cir. 1998) ("A cause of action under article 1802 accrues–and the

---

[10] Article 1802 is now Article 1536 of the Puerto Rico Civil Code of 2020 and is codified at P.R. LAWS ANN. tit. 31, § 10801.

[11] Article 1868 is now Article 1204 of the Puerto Rico Civil Code of 2020, and is codified at P.R. LAWS ANN. tit. 31, § 9496.

prescriptive period set by article 1868(2) therefore begins to run–when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor.").

The Puerto Rico Supreme Court has also held that, in cases involving libel, slander, or defamation, it is presumed not only that the injury occurred, but also that the identity of the tortfeasor was known on the same day of the publication: "it is logical that once evidence of the publication of the libelous news is presented in a newspaper of general circulation in Puerto Rico, it could be reasonably inferred from this circumstantial evidence that the aggrieved person found out about the damage on the same day the information was published." *Ojeda-Ojeda*, 137 D.P.R. at 336-337; *see also Colón Pérez*, 175 D.P.R. at 713-714 ("[I]t is **presumed** that this [referring to when aggrieved person learned of the damage] occurred on the same day of the challenged publication, so it is up to the plaintiff to prove that it actually occurred on a later date." (our translation and emphasis)).

Here, Plaintiff's claim against The Times Defendants as to each Article accrued, respectively, on October 19, 2020 (when the First Article was published) and June 30, 2022 (when the Second Article was published). *See* ECF No. 121, at 3, ¶2. Plaintiff does not allege, nor could he plausibly do so, that he did not know or should not have known about the Articles on the dates they were published. Because at least two years have elapsed between the publication dates and the date on which this suit was filed, Plaintiff's claim should be dismissed as untimely.

### ii. The Second Amended Complaint claims reputational damages, yet it fails to allege the essential elements of a defamation claim.

Not only are the claims time-barred, but Plaintiff does not sufficiently plead the necessary elements to support a defamation claim.

Defamation claims in Puerto Rico are generally asserted by means of the general tort statute, Article 1536 of the Puerto Rico Civil Code, rather than the Puerto Rico Constitution or the

Libel and Slander Act, as explicitly recognized by the Supreme Court of Puerto Rico in *Colón Pérez*, 175 D.P.R. at 713. A private person may recover damages for a defamatory statement if the following elements are met: (1) "that the information is false"; (2) "that the plaintiff suffered real damage"; and (3) "that the publication was negligent". *Garib Bazán v. Clavell*, 135 D.P.R. 475, 482, (1994) (our translation) (referencing *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Maldonado v. Marrero Padilla*, 121 D.P.R. 705, 715, 21 P.R. Offic. Trans. 694 (1988); *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 21 P.R. Offic. Trans. 29 (1988); *Soc. de Gananciales v. López*, 116 D.P.R. 112, 115, 16 P.R. Offic. Trans. 142 (1985); *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 262, 15 P.R. Offic. Trans. 346 (1984); *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174, 180, 8 P.R. Offic. Trans. 178 (1978); *Zequeira Blanco v. El Mundo, Inc.*, 106 D.P.R. 432, 435, 6 P.R. Offic. Trans. 605 (1977)).[12]

Plaintiff fails to allege specific facts to support his defamation claim. While the Second Amended Complaint alleges that The Times Defendants "published damaging and unsubstantiated allegations of tax evasion and money laundering, regarding Plaintiff and the bank, despite knowing these claims were unsubstantiated," (ECF No. 121, at 4, ¶4), and further claims that this "wide[] report[ing] . . . damage[ed] Plaintiff's reputation and business" (*Id.* at 5, ¶2), it does not come close to satisfying the required elements of falsity, damages, or negligence. The Second Amended Complaint fails to identify any statements in the Articles that were supposedly false, nor does it

---

[12] The "actual malice" standard applies when the subject of the alleged defamation is a public official or public figure. *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 87, 101 (1st Cir. 2007) (citing *Gertz v. Welch*, 418 U.S. 323, 342–43 (1974)). In contrast, the "negligence" standard–applicable to private individuals–is less demanding from the plaintiff's perspective. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 n.3 (1st Cir. 2011) (quotations and internal citations omitted). For purposes of this Rule 12(b)(6) motion only, The Times Defendants assume that Plaintiff is a private individual and therefore subject to the negligence standard, not the actual malice standard. It bears noting, however, that the Second Amended Complaint omits relevant context: by the time the Articles were published, Plaintiff had written books, hosted his own shows, was a podcaster, and was a regular guest on TV shows. *See* Peter Schiff, *Our Team*, SCHIFFGOLD, https://www.schiffgold.com/our-team/peter-schiff. The Times Defendants reserve all rights to argue, if necessary, that Plaintiff is a public figure. Regardless, because the Second Amended Complaint fails to plead facts sufficient to meet even the negligence standard, it necessarily fails to meet the more demanding actual malice standard.

meaningfully allege concrete harm from the purported defamation. Even if there were a meaningful allegation of harm, the Second Amended Complaint does not explain how it flowed from any false statement by The Times Defendants, as opposed to the truth (that Plaintiff's bank was under investigation). And the Second Amended Complaint does plead how The Times Defendants could have known that the statements were false and, thus, how they acted with negligence.

Thus, the Amended Complaint does not meet the necessary requirements to support a defamation claim. *See e.g. Luis Santiago v. Santiago*, 731 F. Supp. 2d 202, 209-210 (D.P.R. 2010) (dismissing a defamation claim because the complaint did "not allege sufficient facts necessary to establish a claim for defamation under the heightened pleading standard announced in *Bell Atl. Corp. v. Twombly* and *Ashcroft v. Iqbal*," and nothing that "conclusory statements that turn the defamation claim into an 'unadorned, the-defendant-unlawfully-harmed-me accusation'" are insufficient to survive dismissal) (cleaned up).

### iii.  The Articles fall within the fair and true privilege.

Furthermore, even if one were to assume for purposes of argument only that the Second Amended Complaint sufficiently alleged the elements of a defamation claim, both Articles clearly fall within the fair and true report privilege.

The Supreme Court of Puerto Rico has also held that "the 'fair and true report' privilege – which has been part of our laws since the beginning of this century– **protects even those who publish false or defamatory information, as long as the same truly reflects the events occurred in the course of public or official proceedings, reports or actions of government agencies**." *Villanueva v. Hernández Class*, 128 D.P.R. 618, 648 (1991) (translation from P.R. Offic. Trans.). In order for this privilege to apply, two requirements must be met: (1) "the story must be a fair report of the proceedings object of the information;" and (2) "the published report

must be 'true' in the sense that it must reflect the truth of what happened or what was said in the course of said proceeding." *Id.* at 647 (emphasis added). "To be fair and true, a report need not be perfectly "accurate"; it suffices that it be a substantially accurate summary of the occurrence reported." *Id.*

Here, the First Article accurately reported on a government investigation, while the Second Article accurately relayed statements made by government officials at the press conference and described the actions the officials took. *See, e.g.*, *Gubarev v. BuzzFeed, Inc.*, 340 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (noting that, in applying New York's fair report privilege, NY Civ. Rights Law, § 74, "courts have extended the term 'official proceeding' to cover any official investigation, even if it is not open to the public"); *Olsen v. Providence Journal Co.*, 261 F. Supp. 3d 362, 367 (D.R.I. 2017) (citing cases where courts have applied privilege to government press conferences). In neither case does Plaintiff allege, nor could he, that The Times Defendants did not attribute the information to the government proceedings or accurately characterize those proceedings. Moreover, both Articles reported the news in a "moderate, professional tone, avoiding crude or sensationalistic styles." *Villanueva,* 128 D.P.R. at 648.

Consequently, even if the Plaintiff met the elements for a defamation claim –which he clearly does not– the claim still would not be viable because the Articles clearly fall within the fair and true report privilege.

**B. Even if the Court treats the Section 1985 claim as such, it should still be dismissed because it is time-barred and fails to state a plausible claim that The Times Defendants participated in a conspiracy to violate Plaintiff's constitutional rights.**

**i.  Plaintiff's claim against The Times Defendants is time-barred.**

Even if treated as a Section 1985 claim, Plaintiff's claim is subject to the one-year limitations period. Claims under Section 1985(3) borrow the forum state's statute of limitations for general tort actions, and in Puerto Rico, as noted, the general tort statute establishes a one-year

period. Because the Articles were published in October 2020 and June 2022, but the suit was not filed until late in 2024, Plaintiff's claims are time-barred. *See Rodríguez-García v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004) ("Sections 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims . . . [and] . . . the parties agree that the appropriate statute of limitations is Puerto Rico's one-year period governing tort actions.").

The one-year statute of limitations for Plaintiff's claim under Section 1985 begins when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. *See Moran Vega v. Cruz Burgos,* 537 F.3d 14, 20 (1st Cir. 2008) ("Section 1983 [and by extension, Section 1985] claims generally accrue when the plaintiff knows or has reason to know of the injury on which the action is based." (internal citations omitted); *Álamo-Hornedo v. Puig*, 745 F.3d 578, 581 (1st Cir. 2014); *Rodríguez-García,* 354 F.3d at 96-97 ("Federal law determines the date on which the claim accrued. Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his claim.") (internal citations omitted); *see also Andrews v. Fremantlemedia, N.A., Inc.,* 613 F. App'x 67, 68 (2nd Cir. 2015) ("Claims under § 1981 and § 1985 accrue when the plaintiff knows or has reason to know of the injury which is the basis of his action.") (cleaned up); *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001) (analyzing section 1983 and 1985(3) claims together and finding that claims "accrue[] at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim")

Plaintiffs' conspiracy claim under Section 1985(3) is without a doubt time-barred. The Second Amended Complaint alleges a "[c]oordinated campaign to damage Plaintiff via closure, press, and media dissemination." ECF No. 121, at 5. But Plaintiff does not point to any conduct on the part of The Times Defendants that occurred after the Articles were published in October 2020 and June of 2022.

Plaintiff nonetheless attempts to salvage his time-barred claims by alleging that he "found out about the alleged conspiration between the defendants in April of 2024 after receiving the information from the IRS." *Id.* at 4, ¶5. Plaintiff contends that the claim is timely under the "fraudulent concealment doctrine" (also known as equitable tolling) because he was "prevent[ed] . . . from discovering the conspiracy until April 2024, after a contested FOIA process." *Id.* at 5. For good measure Plaintiff also invokes the "continuing harm" doctrine since he "[t]he liquidation overseen by OCIF's Trustee remains incomplete, continuing to damage Plaintiff's reputation, finances, and business opportunities." *Id.*

None of these doctrines apply. Even if these allegations were treated as true, they would have nothing to do with his distinct claim against The Times Defendants. The Second Amended Complaint gives no details about what Plaintiff allegedly learned in April 2024, how The Times Defendants actively "concealed" their participation in the supposed conspiracy, or what "continuing harms" Plaintiff continues to experience–all of which are fatal problems. *See*, *e.g.*, *Martin v. Somerset Cnty.*, 86 F.4th 938, 945 (1st Cir. 2023) ("A plaintiff who seeks to invoke equitable tolling must effectively argue for its application, not merely mention its name and refer cryptically to scattered facts that populate the record."); *Morales v. Rivera*, 217 F. Supp. 3d 464, 469 (D.P.R. 2016) ("Equitable tolling is unavailable because Plaintiff has not alleged any facts of misconduct concealing Plaintiff's claim."); *Gorelik v. Costin*, 605 F.3d 118, 122-123 (1st Cir. 2010) (rejecting arguments under the continuing violation doctrine because the plaintiff discovered a newsletter on the defendant's website more than a year before filing); *Navarro-Colón v. Rodríguez-Mulet*, 582 F. Supp. 3d 5, 15- 16 (D.P.R. 2022) (distinguishing between continuing violations and the harmful effects of a discrete act); *Bonilla v. Trebol Motors Corp.*, 913 F. Supp. 655, 659-60 (D.P.R. 1995) (same).

But even setting those points aside, the Second Amended Complaint makes abundantly clear that Plaintiff knew or should have known of the alleged injuries at the time they occurred–which is well outside the limitations period. The knowledge of these alleged injuries, and not knowledge of the alleged "conspiracy," is what triggers the limitation period. *See e.g., Benítez-Pons v. Com. of Puerto Rico*, 136 F.3d 54, 59 (1st Cir. 1998) (explaining that "Puerto Rico law establishes a one year prescription period for the [Section 1983] claims in this case" that "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury."). Those injuries–the "damage" purportedly caused by The Times Defendants' news articles–would have occurred upon publication of the articles in October 2020 and June 2022.

### ii. Plaintiff fails to state a plausible claim that The Times Defendants participated in a conspiracy to violate Plaintiff's constitutional rights, and it should be dismissed.

The essence of a Section 1985(3) claim is that the defendants conspired to deprive someone of his civil rights based on his membership in a protected class. *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 838 (1983). It is not designed to address commercial conspiracies. As the Supreme Court said, courts cannot "construe 1985(3) to reach conspiracies motivated by economic or commercial animus." *Id.*; *Meléndez-García v. Sánchez*, No. CV 02-1646 (ADC), 2006 WL 8449985, at *12 (D.P.R. Nov. 7, 2006) (quoting *United Bhd. of Carpenters & Joiners of Am.*, 463 U.S. at 826) (finding that "[m]embership in the ROTC is not a historically suspect class such as race, national origin or sex"); *Sanchez v Autoridad de Energia Electrica*, 360 F Supp 2d 302, 313 (D.P.R. 2004); *see also e.g.*, *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 109 (1st Cir. 2008) (holding that "§ 1985(3) provides no remedy for animus on the basis of political beliefs"). But that is precisely what Plaintiff here is trying to do, and, for that reason, the Second Amended Complaint fails.

For a claim under Section 1985 to be plausible the following elements must be well pled: (i) "a conspiracy;" (ii) "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws;" (iii) "an overt act in furtherance of the conspiracy;" and, lastly, (iv) either (a) an "injury to person or property" or (b) "a deprivation of a constitutionally protected right." *Soto-Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1 (1st Cir. 2012) (citing *Pérez–Sánchez,* 531 F.3d at 107). Moreover, courts have held that a Section 1985 claim requires: "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Pérez–Sánchez,* 531 F.3d at 107 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)). Not one of these elements is meaningfully alleged here.

Plaintiff does not plausibly plead an animus related to his membership in a protected class. The Second Amended Complaint briefly states that Plaintiff "is a member of a protected class" but does not specify which class the Plaintiff belongs to. *See* ECF No. 121, at 1; *cf. Parker v. Landry*, 935 F.3d 9, 14, 17-18 (1st Cir. 2014) (complaint must be dismissed when alleged facts are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," and affirming district court's finding that plaintiff "fail[ed] to state a plausible claim under section 1985(3)"). Impermissibly, he claims only an economic conspiracy. Plaintiff's failure to address that deficiency after having the opportunity to amend the complaint twice is a concession that no such animus exists.

But Plaintiff's Section 1985 claim fails for a bevy of other reasons, too.

The Amended Complaint states that the Plaintiff's business and reputation were damaged as a result of both a press conference held on June 30, 2022, where "IRS, J5, and OCIF representatives" allegedly made misrepresentations about an investigation into Euro Pacific Bank, and subsequent news reporting (including the Second Article), as well as prior reporting (including the First Article) based on alleged leaks by officials to The Times Defendants and others. *See* ECF

No. 121, at 3-4. Plaintiff alleges, without offering any support, that government officials conspired with the media to "damage Plaintiff via closure, press, and media dissemination." *Id.* at 5.

Therefore, the Second Amended Complaint offers nothing more than vague assertions of an "alleged conspiracy" in which "IRS/J5 agents leaked confidential information to media." ECF No. 121, at 4, ¶ 4. There are no allegations to plausibly support a claim of an agreement or shared purpose between the defendants. The Amended Complaint also lacks any details regarding how the conspiracy was agreed to or what kind of cooperative relationship might have existed between the state actors and The Times Defendants. *See Torres Rosado v. Rotger Sabat,* 204 F. Supp. 2d 252, 267 (D.P.R. 2002), *aff'd,* 335 F.3d 1 (1st Cir. 2003) ("Bare conclusory allegations of conspiracy are insufficient, and a complaint that fails to plead in some detail, through reference to material facts, the relationship or nature of the cooperation between the state actors and the private individuals, including how the conspiracy was made or 'hatched,' does not state a valid claim for conspiracy") (internal citations omitted). Nor does the Second Amended Complaint adequately allege injury or deprivation of a constitutionally protected right.

Hence, Plaintiff's claim under Section 1985 should be dismissed.

**C. Even if the Court treats the tortious interference claim as such, it should still be dismissed because it is not only time-barred, but it fails to state a plausible claim that The Times Defendants interfered with a contract and caused damages.**

### i. Plaintiff's claim against The Times Defendants is time-barred.

As noted above, to the extent that plaintiff cannot recover for defamation, it cannot recover under other legal theories based on the same publication, because those claims are subject to the same First Amendment protections. Like Plaintiff's defamation and Section 1985 claims, however, if Plaintiff's tortious interference claim were to be treated as such, it would be subject to the one-year limitations period. Tortious interference claims are governed by Puerto Rico's statute of limitations for general tort actions, and in Puerto Rico, as noted, the general tort statute establishes

a one-year period. *See Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 856 (1st Cir. 2016) (explaining that tortious interference claims under Puerto Rico's general tort statute are subject to a one-year limitations period that "begins to run from the time the aggrieved person had knowledge" of the harm.") (quotations and internal citations omitted).

Here, Plaintiff asserts that OCIF allegedly "blocked" the Euro Pacific Bank's sale on May 16, 2022 (ECF No. 121, at 3, ¶ 3) and claims that defendants "unlawfully interfered with Plaintiff's business, leading to the loss of a $17.5 million sale to Qenta in 2022" (*Id.* at 5). Therefore, Plaintiff knew or should have known about the alleged harm caused by the loss of the sale and the defendants' alleged interference by 2022. In addition, the Articles were published in October 2020 and June 2022. The suit, however, was not filed until late in 2024.

Therefore, Plaintiff's tortious interference claim is time-barred and should be dismissed.

> ### ii. Plaintiff fails to state a plausible claim that The Times Defendants interfered with a contract between Plaintiff and another party, causing damages, and it should be dismissed.

Furthermore, Plaintiff's allegations also fail to state a plausible tortious interference claim that The Times Defendants intentionally interfered with a contract between Plaintiff and another party, causing damages, for several reasons.

Tortious interference claims under Puerto Rico law require plaintiffs "to show (1) the existence of a contract between two or more parties, (2) interference with that contract by the defendant, (3) 'fault' on the defendant's part, (4) damage to the plaintiff, and (5) a nexus between the plaintiff's damage and the defendant's fault." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (citing *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 115 P.R. Offic. Trans. 727, 734-735 (1984)).

The first element –existence of a contract for a fixed period– is "indispensable." *See e.g., Dolphin Int'l, Inc. v. Ryder Truck Lines, Inc.*, 27 P.R. Offic. Trans. 869 (1991). "If what is affected

is . . . a profitable financial relationship where there is no contract, the action does not lie. . . ." *Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1081 (1st Cir. 1986). Because a contractual fixed period is essential to a tortious interference claim, there can be no claim when the contract at issue has no expiration date and is terminable at will. *See Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV*, 828 F. Supp. 2d 425, 430 (D.P.R. 2011). Nor can there be a tortious interference claim if what is affected is a "mere expectancy or a profitable financial relationship." *Dolphin Int'l.,* 127 D.P.R. at 882–83 (internal citation omitted).

In addition to the existence of a contract for a fixed period, the "fault" element of tortious interference "requires a stronger showing," given that a defendant must have "acted tortiously, with knowledge of the contract's existence." *General Office Products Corp.,* 115 P.R. Offic. Trans. at 734. "[T]he plaintiff must show that the defendant intended to interfere with the contract, knowing that this interference would cause injury to the plaintiff." *New Comm Wireless Servs., Inc.*, 287 F.3d at 10 (citation omitted). Thus, under Puerto Rico law, "to ground liability the defendant's actions must at least evince a quasi-delictive intent." *Id.*

Here, Plaintiff fails to allege the existence of a contract for a fixed term between himself and Qenta or any other third party. The Second Amended Complaint merely references a "$17.5 million sale to Qenta" that was allegedly lost, without identifying any contractual terms, duration, or obligations binding the parties. There is no allegation that the purported sale was anything more than a prospective business opportunity subject to OCIF approval, or a "mere expectancy or a profitable financial relationship," that cannot serve as a basis for a tortious interference action under Puerto Rico law. *See Terradata, Inc. v. Budget Rent-A-Car Intern, Inc.*, 218 F.Supp.2d 101, 104-05 (D.P.R. 2003) (dismissing a tortious interference claim because the alleged contract was subject to suspensive conditions and "never became an effective contract providing a valid foundation for the claim of tortious interference in this case").

In fact, Act No. 273-2012, as amended –known as the "International Financial Center Regulatory Act"– which governs the operations of international financial institutions such as Euro Pacific Bank in Puerto Rico, provides that any sale or transfer of stock, interest or participation in the capital of an international financial institution "shall be null *ab initio* if the written authorization of the Commissioner has not been obtained". P.R. LAWS ANN. tit. 7, § 3089. Accordingly, not only does the Second Amended Complaint fail to allege the existence of a contract between Plaintiff and Qenta or any other third party, but it also could not have plausibly alleged such a contract, as any purported sale would be void from the outset without prior approval from OCIF. As such, Plaintiff's claim fails at the threshold. *See e.g. Future Development of Puerto Rico v. E.L.A.*, 276 F.Supp.2d 228, 242 (D.P.R. 2003) (dismissing a tortious interference action that alleged "a general loss of business opportunity").

Even assuming for purposes of the argument that a valid contract existed, The Second Amended Complaint asserts in conclusory fashion that The Times Defendants "unlawfully interfered" with Plaintiff's "business relations" but offers no factual support for the assertion that they knew of any fixed-term contract, much less that they acted with the required "quasi-delictive intent" to disrupt it. The only conduct attributed to The Times Defendants is the publication of a news article on June 30, 2022 reporting on a press conference. And the courts have recognized that engaging in journalism is not tortious. "The Supreme Court has routinely rejected tort lawsuits premised on the publication of information that was obtained through ordinary newsgathering activities." *Trump v. Trump*, 79 Misc. 3d 866, 879-880 (N.Y. Sup. Ct. 2023) (citing *The Fla. Star v B.J.F.*, 491 U.S. 524, 541 (1989)).

Nor does plaintiff's theory make any sense factually. Plaintiff admits that the alleged sale was "blocked" by OCIF on May 16, 2022, allegedly at "IRS/J5's request"–more than a month

before the article was published. *See* ECF No. 121, at 3, ¶ 3. This timeline renders Plaintiff's theory of causation not only implausible but chronologically impossible.

Finally, Plaintiff fails to allege a plausible causal connection between The Times Defendants' conduct and any damages suffered. Plaintiff's theory of causation is entirely speculative. The Second Amended Complaint does not explain how a news article about a press conference published after the alleged sale was "blocked" allegedly at "IRS/J5's request" could have caused the loss of the so-called Qenta transaction. Nor does it allege that Qenta terminated a contract in response to the Articles or that The Times Defendants communicated with Qenta in any way. The absence of such allegations underscores the implausibility of Plaintiff's claim.

Because Plaintiff has failed to allege the existence of a contract for a fixed term, intentional and tortious interference by The Times Defendants, and a causal nexus between the alleged interference and any damages, the tortious interference claim is legally deficient. The claim rests entirely on conclusory assertions and speculative inferences and must be dismissed with prejudice.

### D. The Amended Complaint should be dismissed with prejudice because any amendment would be futile, especially in light of the statute of limitation problem.

"[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022). That is in keeping with the general norm that leave to amend a complaint may be denied for several reasons, including "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, **and futility of amendment.**" *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (emphasis added). And, "[i]n assessing futility, the district court must apply the standard which applies to motions to dismiss under [Rule] 12(b)(6)." *Adorno v. Crowley Towing & Transp.*, 443 F.3d 122, 126 (1st Cir. 2006). That is to say that "[a]n amendment is futile if it

could not withstand a Rule 12(b)(6) motion to dismiss." *Menard v. CSX Transp., Inc.*, 840 F. Supp. 2d 421, 427 (D. Mass. 2012).

Here, the Plaintiff has amended his complaint twice. Plaintiff initially filed his Complaint on November 4, 2024. ECF No. 1. Shortly thereafter, Plaintiff filed an Amended Complaint. ECF No. 3. On November 13, 2024, this Amended Complaint was stricken from the record. ECF No. 7. The next day, the Plaintiff filed an Amended Complaint. ECF No. 10. On June 2, 2025, Plaintiff filed a motion for leave to file the Second Amended Complaint, which the Court granted and was filed separately. ECF Nos. 118, 119 & 121.

The discussion above establishes various reasons why it would be futile for Plaintiff to seek leave to amend his complaint a third time: the claim is time-barred, Plaintiff cannot get around the fair and true report privilege, and there is no possibility Plaintiff can adequately allege tortious interference or any "conspiracy" claim against The Times Defendants. In sum, it would be futile for Plaintiff even to attempt to amend, not to mention inconsistent with Rule 11.

## V. CONCLUSION AND REQUEST FOR RELIEF

**WHEREFORE**, The Times Defendants respectfully request that this Honorable Court dismiss the claims against them in the Second Amended Complaint with prejudice and without leave to amend, and award The Times Defendants reasonable attorney's fees and costs incurred in defending against this action.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 30th day of July 2025.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**O'NEILL & BORGES** LLC

*Attorneys for The New York Times Company and Matthew Goldstein.*
250 Muñoz Rivera Avenue, Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*s/Salvador J. Antonetti-Stutts*
Salvador J. Antonetti-Stutts
USDC-PR No. 215002
salvador.antonetti@oneillborges.com

*s/Jorge A. Candelaria-Serrano*
Jorge A. Candelaria-Serrano
USDC-PR No. 306004
jorge.candelaria@oneillborges.com