IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PETER DAVID SCHIFF,

Plaintiff,

v.

Case No. 3:24-cv-01511 (CVR)

INTERNAL REVENUE SERVICE (IRS), *et al.*,

Defendants.

**PLAINTIFF'S RULE 59(E) MOTION TO ALTER OR AMEND JUDGMENT AND TO**

**VACATE OR MODIFY DOCKET NOS. 271, 272, 273, 274, 275, AND 276**

**TO THE HONORABLE COURT:**

**INTRODUCTION**

Plaintiff Peter David Schiff respectfully moves, pursuant to Federal Rule of Civil Procedure 59(e), to alter or amend the Judgment entered on March 12, 2026, Docket No. 276, and to vacate or modify the companion Opinion and Orders entered the same day at Docket Nos. 271, 272, 273, 274, and 275. This motion does not merely reargue matters already decided. It seeks correction of clear legal error in the Court's own rulings and in the final judgment those rulings produced, including errors that improperly closed the case as to OCIF, Trustee Lugo, the IRS/United States, and the relevant federal officials on grounds that were threshold, mischaracterized, or never properly litigated on the merits. It also seeks correction of the Court's treatment of the cited liquidation papers as though Plaintiff had personally signed away his own claims, even though Plaintiff would not have signed any such release in his personal capacity and the cited language does not unmistakably establish one. See Soto-Padro v. Pub. Bldgs. Auth.,

1

675 F.3d 1, 9 (1st Cir. 2012); Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005).

This motion is further strengthened by a post-judgment federal ruling entered **on March 25, 2026 in Schiff v. IRS, Case No. 1:24-cv-2230 (TNM),** which confirms that Plaintiff was in fact being denied information by the IRS on legally insufficient grounds while this case was being closed. The D.C. court held that, although the IRS had run an adequate search on the first FOIA request, "it failed to show a FOIA exemption shielded the resulting material from disclosure," and further held that, except for a narrow final subpart, "Schiff's second request otherwise reasonably described the records he sought." Memorandum Opinion, ECF No. 24, at 1, 19-20 (D.D.C. Mar. 25, 2026). The court's operative directive was unequivocal: "The IRS must now disclose the documents it has improperly withheld." Id. at 20. That ruling matters here because the IRS should not be permitted to benefit in this case from its own improper withholding in the FOIA case, nor should an incomplete record caused by that withholding be converted into a failure of justice through a with-prejudice judgment.

The March 12 judgment is exceptionally sweeping. It states that, '[c]onsidering the Court's Opinion and Orders issued today (Docket Nos. 242, 271, 272, 273 and 274),' all claims against all remaining defendants are dismissed 'WITH PREJUDICE' and that '[t]his case shall be closed.' Docket No. 276 at 1-2. That disposition is too broad as a matter of law because several of the underlying rulings were jurisdictional or otherwise non-merits in character. Yet the final judgment converted them into a universal merits-preclusive dismissal. Federal Rule of Civil Procedure 41(b) confirms the opposite premise: a dismissal for lack of jurisdiction does not operate as an adjudication on the merits. Fed. R. Civ. P. 41(b).

2

The strongest error, however, lies in Docket No. 271. There the Court expressly recognized that Magistrate Judge Lopez had not decided the sufficiency of the personal-capacity Bivens claims against Justin T. Cole, Matt Line, and Mike Batdorf because no dispositive motion had been directed at those claims and because the federal defendants had appeared only in their official capacities. Docket No. 271 at 5 n.4. The Court nevertheless proceeded, 'for judicial economy,' to decide the issue sua sponte and to dismiss those personal-capacity claims with prejudice. Id. at 12. That ruling conflicts with settled First Circuit law. Sua sponte Rule 12(b)(6)-type dismissals are 'strong medicine.' Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002). They ordinarily are improper unless the plaintiff receives notice and a meaningful opportunity to respond or amend, unless futility is crystal clear. Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 22-24 (1st Cir. 2014).

The second major error is the form of the final judgment itself. Docket Nos. 272, 273, and 274 each rested, at least in material part, on Eleventh Amendment immunity, foreign sovereign or official immunity, lack of personal jurisdiction, and insufficient service of process. Docket No. 272 at 4-5; Docket No. 273 at 5, 9-10; Docket No. 274 at 8-12. Those threshold rulings do not support a merits-preclusive dismissal with prejudice. Lebron-Rios confirms that when the defect is a precondition to suit rather than a merits resolution, dismissal should be without prejudice. See Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 13-14 (1st Cir. 2003). The same logic applies here. Even if the Court adheres to every underlying immunity and service ruling, Rule 59(e) relief remains necessary to correct the judgment's legal effect.

Plaintiff's requested relief was not limited to retrospective money damages. The complaint also sought non-monetary relief aimed at addressing continuing constitutional and reputational harm allegedly caused by official misconduct, including relief directed at exposing

3

and correcting the false official narrative that continues to impair Plaintiff's reputation and future earning capacity. Accordingly, the Court should not have treated the federal side of the case as though sovereign immunity categorically disposed of every form of requested relief without separate analysis of the non-monetary relief sought.

The third major error concerns pleading and amendment. The Court repeatedly declined to consider FOIA materials and other supporting documents because they were outside the pleadings or had not been presented to the magistrate judge, but at the same time faulted the operative pleading for lacking sufficient detail and closed the case with prejudice. Docket No. 273 at 10. That is especially problematic because Plaintiff had already moved for leave to amend in order to identify additional defendants and incorporate newly discovered FOIA evidence. Docket No. 169 at 1-3. Once the Court excluded those materials from consideration, fairness and Rule 15(a)(2)'s liberal amendment policy required a realistic opportunity to replead, not a final with-prejudice disposition. See Fisher v. Kadant, Inc., 589 F.3d 505, 508-09 (1st Cir. 2009).

The March 25, 2026 FOIA opinion now removes any serious doubt on that point. It did not merely require further agency explanation; it held that "the IRS fell short of its burden to show FOIA Exemptions 5, 7(A), and 7(E) applied" and that "The IRS must now disclose the documents it has improperly withheld." Memorandum Opinion, ECF No. 24, at 20. Thus, what the March 12 orders treated as an absence of sufficient record detail overlapped with information another federal court has now held was being withheld improperly by the IRS itself. The IRS should not obtain the practical benefit of those improper withholdings by using the resulting informational gap to support final dismissal with prejudice.

Finally, Docket No. 272 contains a separate doctrinal error. It treated a release defense as though it deprived the Court of subject-matter jurisdiction 'in addition to' Eleventh Amendment

4

immunity. Docket No. 272 at 5. But release is an affirmative defense, not a jurisdictional limitation. Fed. R. Civ. P. 8(c)(1); Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 12 (1st Cir. 1997). And the release language on which the ruling relied is, on its face, written in terms of claims that Euro Pacific may have, not as an unmistakable personal waiver of every individual constitutional, reputational, and tort claim asserted here. Docket No. 195 at 15-16; Docket No. 251 at 23-24. Plaintiff would not have signed, and should not now be treated as having signed, those liquidation documents as a surrender of his own individual claims in his personal capacity. At minimum, Rule 59(e) relief is necessary to correct that jurisdictional mischaracterization, to prevent it from being embedded in a with-prejudice judgment, and to reopen the case as to OCIF and Trustee Lugo on a proper legal footing rather than on a supposed personal release the record does not clearly establish.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff's operative pleading expressly alleged personal-capacity claims against several federal and Puerto Rico officials. The July 31, 2025 amendment motion sought leave to identify additional defendants and to incorporate newly discovered FOIA materials showing coordination among IRS, J5, ATO, and OCIF personnel in connection with the bank closure and the June 30, 2022 press event. Docket No. 169 at 1-3. The attached proposed amended complaint specifically named Justin T. Cole, Matt Line, and Mike Batdorf in both their personal and official capacities and alleged that they participated in planning, media messaging, and coordination with OCIF concerning the bank's shutdown and the June 30, 2022 press conference. Docket No. 169-1 at 2-3, 7-11, 12-14.

Those allegations were not invented in the abstract. The record contained FOIA-based materials that, at minimum, supplied concrete context for the request to amend and for Plaintiff's

argument that further repleading would not be futile. One email entitled 'J5 - Operation Atlantis - OCIF Press Conference Update' reflected Justin Cole's statement that he would coordinate with Matt Line and Mike Batdorf regarding 'deconfliction issues' for the planned OCIF event. Docket No. 254-4 at 14, 22. Another email looped Line, Batdorf, and Cole into discussions with OCIF concerning timing, participation, and the importance of the outcome to J5 partners. Id. at 68. A separate draft media-advisory chain on June 28, 2022 reflected Justin Cole's involvement in preparations for the June 30 J5 event. Id. at 98-100. Whatever the ultimate legal significance of those materials, they underscore why the Court should not have declared further amendment futile while simultaneously refusing to consider the materials because they were outside the pleadings.

That point is no longer theoretical. On March 25, 2026, the United States District Court for the District of Columbia held in Schiff v. IRS that the IRS had not carried its burden to justify withholding many of the very categories of records tied to the J5 press conferences and related subjects. Specifically, the court held that "the IRS fell short of its burden to show FOIA Exemptions 5, 7(A), and 7(E) applied" and ordered that "The IRS must now disclose the documents it has improperly withheld." Memorandum Opinion, ECF No. 24, at 20. The court also rejected the IRS's broader objection to Schiff's June 2024 request in nearly all respects, holding that Schiff's second request "otherwise reasonably described the records he sought," with only the final subpart requesting documents mentioning the taxing authorities of various countries found too vague. Id. at 19-20. The opinion further admonished that "[t]he IRS cannot nitpick its way out of FOIA obligations." Id. at 19. Those post-judgment findings strongly reinforce Plaintiff's position that additional federal materials existed, were being wrongfully

withheld, and should not have been used indirectly to support futility or a sweeping with-prejudice closure in this action.

On March 12, 2026, the Court entered four dispositive opinions, a mootness order, and a final judgment. Docket No. 271 adopted the R&R regarding the United States, dismissed all claims against the United States with prejudice, and then independently held that all Bivens claims against Cole, Line, and Batdorf in their personal capacities were insufficient and therefore dismissed them with prejudice as well. Docket No. 271 at 12. Docket No. 272 adopted the R&R as to OCIF, Commissioner Zequeira, and Trustee Lugo, concluding that Eleventh Amendment immunity barred the official-capacity claims and that the release in the liquidation documents independently deprived the Court of subject-matter jurisdiction. Docket No. 272 at 4-5. But the quoted release language was framed in corporate terms and did not unmistakably establish a personal-capacity waiver by Schiff himself. Docket No. 195 at 15-16; Docket No. 251 at 23-24. Docket No. 273 dismissed The Age defendants for lack of personal jurisdiction and insufficient service and dismissed the media claims on pleading grounds after refusing to consider record materials that Plaintiff invoked in support of curability. Docket No. 273 at 5-10. Docket No. 274 adopted the foreign-defendant R&R, held that the foreign defendants were protected by FSIA and common-law immunity, and nonetheless dismissed all claims against them with prejudice. Docket No. 274 at 12. Docket No. 275 then declared Plaintiff's pending motions to amend/correct, reconsider, and file additional material moot. Docket No. 275. The final judgment, Docket No. 276, swept all of those rulings into a universal dismissal with prejudice. Docket No. 276 at 1-2.

**RULE 59(E) STANDARD**

Rule 59(e) generally rests on an intervening change in controlling law, a clear legal error, or newly discovered evidence. Soto-Padro, 675 F.3d at 9. A party may not use Rule 59(e) to rehash arguments previously rejected or to raise ones that could and should have been made before judgment, and relief under the rule is exceedingly difficult to obtain. See id.; Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005).

The March 25, 2026 D.C. FOIA opinion also fits comfortably within Rule 59(e)'s framework. It post-dates the March 12, 2026 judgment and constitutes newly available post-judgment material bearing directly on whether the federal record was artificially incomplete because of IRS conduct. At minimum, it confirms clear error in treating the absence of fuller federal materials as a basis for finality when another federal court has now held that the IRS must disclose documents it "improperly withheld." Memorandum Opinion, ECF No. 24, at 20.

Where a party seeks post-judgment leave to amend, the judgment must first be reopened under Rule 59(e) or Rule 60 because '[a]s long as the judgment remains in effect, Rule 15(a) is inapposite.' Fisher v. Kadant, Inc., 589 F.3d 505, 508-09 (1st Cir. 2009). Thus, if the Court concludes that any portion of the March 12 judgment should give way to focused repleading rather than final dismissal, Rule 59(e) is the proper procedural gateway.

Rule 59(e) is also the proper mechanism to correct an overbroad judgment that inaccurately characterizes the legal effect of threshold rulings. The Court is not being asked to disregard the principle that reconsideration is extraordinary. It is being asked to conform its judgment to the actual bases of decision stated in its own orders and to correct a sua sponte dismissal that the parties never squarely litigated.

**ARGUMENT**

**I. THE COURT COMMITTED MANIFEST LEGAL ERROR BY SUA SPONTE DISMISSING THE PERSONAL-CAPACITY BIVENS CLAIMS AGAINST COLE, LINE, AND BATDORF WITH PREJUDICE.**

This is the cleanest and strongest Rule 59(e) issue in the case. The Court's own order acknowledges that Magistrate Judge Lopez did not decide whether the complaint sufficiently pleaded personal-capacity Bivens claims against Cole, Line, and Batdorf because 'no parties have made motions to dismiss the personal capacity Bivens claims against the Individual Defendants,' the United States appeared for those defendants only in their official capacities, and the individuals had not appeared in their personal capacities. Docket No. 271 at 5 n.4. Despite that express recognition, the Court proceeded 'for judicial economy' to decide the issue itself and held that the allegations against Cole, Line, and Batdorf in their personal capacities were insufficient, dismissing those claims with prejudice. Id. at 11-12.

That ruling cannot be reconciled with the pleadings or with First Circuit procedure. First, the operative allegations were not silent as to capacity. Plaintiff's proposed amended complaint expressly identified Justin T. Cole, Matt Line, and Mike Batdorf as defendants sued in both their personal and official capacities. Docket No. 169-1 at 2-3. The complaint also alleged specific personal participation by those individuals in media messaging, planning, and coordination surrounding the June 30, 2022 event. Id. at 5-11, 12-14. So the March 12 ruling was not a mere clarification of an ambiguous pleading; it was an adjudication on the merits of explicitly pleaded personal-capacity claims.

Second, the record itself showed that the federal side had treated the dispute as one involving service and capacity, not as a merits issue already joined by the parties for decision. Docket No. 271 itself records that the United States had appeared for the individual federal

defendants only in their official capacities and that the question of personal-capacity service remained unresolved. Docket No. 271 at 5 n.4. Plaintiff's objections likewise emphasized that the federal motion acknowledged personal-capacity allegations against Cole, Line, and Batdorf and argued only that those individuals had not been personally served. See Docket No. 254 at 4-5. Yet the Court bypassed that threshold posture and entered a definitive merits dismissal with prejudice.

Third, the First Circuit has repeatedly cautioned against exactly this sort of sua sponte merits dismissal. In Chute, the court explained that sua sponte dismissals are 'strong medicine, and should be dispensed sparingly.' 281 F.3d at 319. In Garayalde-Rijos, the First Circuit reiterated that a district court ordinarily may not dismiss on its own motion under Rule 12(b)(6) without giving the plaintiff notice and an opportunity to respond or amend, absent circumstances in which futility is unmistakably clear. 747 F.3d at 22-24. Those principles apply with special force here, where the Court itself acknowledged that the personal-capacity merits issue had not been the subject of a proper dispositive motion by those defendants in those capacities.

Nothing in the March 12 order identifies the kind of extraordinary circumstance that would justify dispensing with notice and an opportunity to amend. To the contrary, the record cut the other way. Plaintiff had already moved to amend to add further federal actors and incorporate FOIA evidence (which was unlawfully withheld by the IRS for years and was only recently made available to Plaintiff as the result of a concurrent FOIA lawsuit against the IRS); he had identified newly disclosed communications involving Cole and other federal officials; and the Court chose not to consider those materials because they were outside the pleadings. Docket No. 169 at 1-3; Docket No. 254-4 at 14, 22, 68, 98-100; Docket No. 273 at 10. Once the Court took the position that the additional materials could not be considered at the pleading stage, it could

10

not then reasonably conclude that amendment was so clearly futile that no notice or repleading opportunity was required.

Nor did 'judicial economy' authorize the shortcut. Judicial economy cannot override the basic adversarial protections recognized in Garayalde-Rijos and Chute. If anything, the Court had obvious narrower alternatives: it could have reserved decision; it could have dismissed without prejudice on service grounds if appropriate; or it could have given notice and a short period for targeted amendment. What it could not do, consistent with First Circuit law, was convert an unbriefed merits question into a final with-prejudice adjudication by judicial fiat.

This problem is not cured by the Court's statement that it was merely avoiding prolonging 'the inevitable.' Docket No. 271 at 11. Futility cannot be assumed from the absence of a fuller factual pleading when the Court has simultaneously excluded the later materials that supplied additional factual detail and when no proper personal-capacity dispositive motion presented the issue. Under Garayalde-Rijos, the correct course is notice and an opportunity to amend unless futility is crystal clear. The posture here demonstrates the opposite: the parties had not even joined issue on the merits of those personal-capacity claims in the ordinary Rule 12 sense.

The March 25, 2026 FOIA ruling makes that point even stronger. It confirms that Plaintiff's effort to supplement and refine the federal allegations was occurring against the backdrop of ongoing improper IRS withholding. The D.C. court held not only that the IRS had failed to justify withholding under Exemptions 5, 7(A), and 7(E), but also that "The IRS must now disclose the documents it has improperly withheld." Id. at 20. In other words, the federal record was still opening when this Court entered its with-prejudice judgment. That timing alone defeats any confident assertion that further amendment was inevitably futile and underscores

why judicial economy could not justify a final merits dismissal of unbriefed personal-capacity claims.

Accordingly, Rule 59(e) relief is required. The Court should vacate Docket No. 271 insofar as it dismissed with prejudice the personal-capacity Bivens claims against Cole, Line, and Batdorf, reopen those claims, and restore proper adversarial motion practice and, if necessary, narrowly tailored repleading. Because the federal side of the case was closed while the Court simultaneously excluded the later materials Plaintiff identified as supplying additional factual detail, reopening should also extend as necessary to the IRS/United States and the related federal actors for focused further proceedings consistent with the Court's amended judgment.

## II. THE FINAL JUDGMENT IS LEGALLY OVERBROAD BECAUSE IT DISMISSES EVERYTHING WITH PREJUDICE, INCLUDING CLAIMS DISPOSED OF ON JURISDICTIONAL, IMMUNITY, PERSONAL-JURISDICTION, AND SERVICE GROUNDS.

Even if the Court were to reject every merits-focused argument in this motion, Rule 59(e) relief would still be required because the final judgment's universal with-prejudice language is legally untenable. Docket No. 276 states that all claims against all listed defendants are dismissed 'WITH PREJUDICE.' Docket No. 276 at 1-2. But several of the underlying rulings were expressly jurisdictional or otherwise non-merits in character.

Docket No. 272 held that OCIF and the official-capacity claims against Commissioner Zequeira and Trustee Lugo were barred by Eleventh Amendment immunity and therefore outside the Court's subject-matter jurisdiction. Docket No. 272 at 4-5. Docket No. 274 held that the foreign defendants were protected by FSIA and common-law sovereign immunity and expressly noted that improper service would be an additional threshold reason for dismissal. Docket No.

12

274 at 12. Docket No. 273 held that The Age defendants were not properly before the Court because both personal jurisdiction and sufficient service of process were lacking. Docket No. 273 at 5, 9-10. Yet Docket No. 276 collapsed all of those threshold rulings into a merits-preclusive dismissal with prejudice. Docket No. 276 at 1-2.

That is legal error. Rule 41(b) states that a dismissal 'except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19' operates as an adjudication on the merits unless the order states otherwise. Fed. R. Civ. P. 41(b). The rule thus encodes the opposite of what the final judgment did here: dismissals for lack of jurisdiction are not merits adjudications. The First Circuit's decision in Lebron-Rios confirms the point by requiring dismissal without prejudice where the defect was a precondition to suit rather than a merits resolution. 341 F.3d at 13-14. The same logic applies a fortiori to Eleventh Amendment immunity, foreign sovereign immunity, lack of personal jurisdiction, and insufficient service.

A court cannot simultaneously declare that it lacks adjudicatory authority over a defendant or claim and then enter a merits-preclusive judgment on that same claim. The law distinguishes sharply between threshold dismissals and adjudications on the substance. Thus, even if the Court remains persuaded that OCIF is immune, that the foreign defendants are immune, and that The Age defendants were not properly served or subject to personal jurisdiction, the resulting dismissals must be without prejudice. See Fed. R. Civ. P. 41(b); Lebron-Rios, 341 F.3d at 13-14.

This correction matters independently of reinstatement. A with-prejudice judgment can have preclusive effects far beyond the threshold rulings the Court actually made, and here those effects are not abstract: they prematurely close the case against OCIF and Trustee Lugo and reinforce the overbroad closure of the federal side as well. Rule 59(e) therefore is necessary not

13

only to address the sua sponte Bivens dismissal, but also to conform the judgment to the legal character of the rulings that underlie it. The Court should amend Docket No. 276 so that all dismissals resting on subject-matter jurisdiction, sovereign immunity, Eleventh Amendment immunity, lack of personal jurisdiction, and/or insufficient service are expressly without prejudice.

That conclusion is even more compelling given the March 25, 2026 FOIA ruling. Where a separate federal court has just ordered the IRS to turn over documents it was improperly withholding, a with-prejudice judgment would not merely mislabel threshold dismissals; it would freeze the consequences of an incomplete record created in part by the government's own incorrect withholding position. At the very least, if this Court adheres to its threshold rulings, dismissal should be without prejudice so the IRS does not gain claim-preclusive advantage from disclosure failures another court has now found improper.

The same point extends to those places where the Court stated that it was not even reaching an additional threshold defect. Docket No. 271 expressly noted there was no need to reach insufficiency of service once it dismissed the personal-capacity Bivens claims on plausibility grounds. Docket No. 271 at 12 n.6. Docket No. 274 likewise observed that service appeared improper but did not need to be reached because immunity barred the claims. Docket No. 274 at 12 n.7. Those observations reinforce, rather than diminish, the need to correct the judgment's scope. The Court's actual reasoning was threshold reasoning in significant part, and the judgment should reflect that.

**III. THE COURT ABUSED ITS DISCRETION BY EXCLUDING THE FOIA MATERIALS AND OTHER RECORD MATERIALS WHILE SIMULTANEOUSLY REFUSING ANY REALISTIC OPPORTUNITY TO REPLEAD.**

A separate but related ground for Rule 59(e) relief is the interaction between the Court's pleading analysis and its treatment of amendment. The March 12 orders repeatedly faulted the complaint for lacking detail while refusing to consider the very materials that Plaintiff identified as supplying the missing specifics. Docket No. 273 is explicit: 'there are no record materials to review, and any argument using the documents filed in support of the pleadings will not be entertained.' Docket No. 273 at 10. The Court then relied on pleading insufficiency to dismiss with prejudice and to close the case. Docket Nos. 271-276.

The March 25 FOIA opinion crystallizes the prejudice from that procedural mismatch. This was not a case in which Plaintiff merely speculated that more helpful facts might exist somewhere in agency files. Another federal court has now held that the IRS was wrong to withhold records and that it "must now disclose the documents it has improperly withheld." Id. at 20. The same opinion rejected most of the IRS's contention that Schiff's June 2024 request was too broad, holding that, aside from the narrow tax-authority subpart, "Schiff's second request otherwise reasonably described the records he sought." Id. at 19-20. Thus, the government should not be allowed to convert its own improper withholding and overbroad resistance to disclosure into an argument that Plaintiff lacked enough detail and therefore deserved a with-prejudice dismissal.

That approach might be sustainable if Plaintiff had never sought to amend based on newly discovered material. But the record shows the opposite. Months before judgment, Plaintiff moved for leave to amend specifically to identify additional defendants and to incorporate newly discovered FOIA evidence. Docket No. 169 at 1-3. The motion identified particular additional actors, including Guy Ficco, Gary Shapley, Julia Holt, Monica Rodriguez, and Karem Rosario, and explained that the new allegations were based on recent disclosures and independent

investigation. Id. The proposed amended complaint elaborated on the June 2022 coordination, the press event, the alleged concealment, and the roles of Cole, Line, Batdorf, and others. Docket No. 169-1 at 1-15.

In these circumstances, the combination of exclusion and finality produced manifest unfairness. If the Court believed that the operative complaint, standing alone, did not plausibly plead enough detail, and if the Court also believed that the later materials could not be considered because they were outside the pleadings or too late in relation to the R&R process, then the appropriate intermediate remedy was focused leave to amend after reopening the judgment. That is precisely the post-judgment sequence that Fisher contemplates. 589 F.3d at 508-09. What Rule 59(e) permits is not endless amendment, but correction of a final judgment when the Court's own procedural choices created a mismatch between what it would consider and what it would permit the plaintiff to plead. That reopening should expressly reach the federal side of the case, including the IRS/United States and the relevant federal officials, because the March 12 orders closed those claims while simultaneously declining to consider the very materials Plaintiff identified as supplying the missing detail.

The unfairness is particularly acute with respect to the personal-capacity federal claims. The Court excluded the FOIA materials, held the existing allegations deficient, and then sua sponte dismissed with prejudice claims that no personal-capacity federal defendant had moved to dismiss on the merits. Docket No. 271 at 5 n.4, 11-12; Docket No. 273 at 10. The same basic problem recurs in the foreign-defendant context, where Plaintiff's objections argued both that the R&R misapplied immunity doctrines and that any perceived pleading deficiencies were curable, yet the final result was dismissal with prejudice. Docket No. 256 at 1-2.

16

Rule 15(a)(2) directs that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). That generosity narrows after judgment, but it does not disappear; rather, it becomes available through reopening under Rule 59(e) or Rule 60. Fisher, 589 F.3d at 508-09. Here, justice required at least a realistic opportunity to file a focused amended pleading after the Court decided to exclude the later materials from the Rule 12 record. The March 12 judgment should therefore be altered to permit limited repleading at least as to the claims that are not independently foreclosed as a matter of law.

This point supplies an important alternative remedy even if the Court does not fully agree with Plaintiff on every substantive issue. The Court need not definitively endorse every proposed amended allegation to recognize that the simultaneous exclusion of later materials and refusal to permit focused repleading worked manifest injustice. Reopening for limited amendment is therefore proper under Fisher even as a fallback disposition, and that reopening should expressly encompass the federal side of the case—including the IRS/United States and the related federal actors—and, as appropriate, the claims against OCIF and Trustee Lugo to the extent the present judgment treated a non-jurisdictional and non-personal release theory as case-ending.

## IV. DOCKET NO. 272 SHOULD BE MODIFIED BECAUSE IT TREATED A RELEASE AS THOUGH IT STRIPPED THE COURT OF SUBJECT-MATTER JURISDICTION.

Docket No. 272 committed a distinct doctrinal error by conflating an affirmative defense with a jurisdictional bar. The order held that OCIF and the official-capacity claims against Commissioner Zequeira and Trustee Lugo were barred by the Eleventh Amendment and then stated, in the alternative, that the claims were barred because Plaintiff had signed a waiver in the Consent Order, concluding that the Court lacked subject-matter jurisdiction on those grounds as well. Docket No. 272 at 4-5. The R&R used the same formulation. Docket No. 251 at 23-24.

17

That reasoning is especially consequential because it closed the case against OCIF and Trustee Lugo without identifying a clear and unmistakable personal-capacity release by Plaintiff himself. To the contrary, Plaintiff's position is that he would not have signed any surrender of his own personal claims in his individual capacity, and the language quoted by the Court does not unmistakably say that he did.

That is not the law. A release is an affirmative defense. Federal Rule of Civil Procedure 8(c)(1) expressly identifies 'release' among the defenses that must be pleaded affirmatively. Fed. R. Civ. P. 8(c)(1). The First Circuit treats release as an affirmative defense whose burden rests with the party invoking it. Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 12 (1st Cir. 1997). Because release is a defense rather than a jurisdictional prerequisite, any conclusion that it bars a claim goes to the merits of that defense, not to the Court's adjudicatory power.

The distinction is not semantic. By labeling the release issue jurisdictional, the Court merged a debatable defense question into the same category as Eleventh Amendment immunity and then rolled both into a with-prejudice judgment. Docket Nos. 272, 276. Rule 59(e) is necessary to correct that mischaracterization even if the Court remains persuaded that some claims may ultimately be barred by the liquidation documents. Once that mischaracterization is corrected, the case necessarily reopens at least for further proceedings as to OCIF and Trustee Lugo, because the present judgment rests in part on a premise—that Plaintiff personally released his own claims in a jurisdiction-stripping instrument—that the record does not clearly establish and that Plaintiff affirmatively disputes. The Court should amend Docket No. 272 to state that any reliance on the release sounds in defense, not jurisdiction.

Moreover, the release language quoted in the record is not as self-evidently dispositive of Plaintiff's individual claims as the March 12 order assumed. The quoted provision releases OCIF

18

and related parties from claims 'that Euro Pacific may have or may hereafter have or claim to have' arising from the complaint and the conduct used to enforce it. Docket No. 195 at 15-16; Docket No. 251 at 23-24. On its face, that language is drafted in corporate terms. Nowhere does it state that Schiff, in his individual capacity, forever waives his own personal constitutional claims, his own reputational claims, or any personal damages theories distinct from those belonging to Euro Pacific. Plaintiff would not have signed, and should not now be treated as having signed, any waiver of his own personal claims in his individual capacity by way of a corporate liquidation document. It is clear that Plaintiff signed the OCIF-drafted Consent Order containing the release "for and on behalf of Euro Pacific." Nowhere in that Order does Plaintiff also sign for or on behalf of himself in his personal capacity as a shareholder. This is in sharp contrast to the Liquidation Plan which was also drafted by OCIF, in which Plaintiff signed twice, once as a director on behalf of Euro Pacific and a second time in his personal capacity as a shareholder.  That point matters here because the March 12 ruling used the supposed release not merely as a defense theory but as an additional basis to close the case against OCIF and Trustee Lugo. That is especially significant where the complaint alleged personal injuries, personal reputational damage, and harm flowing from alleged concealment and press activity that Plaintiff says he did not fully discover until later. Docket No. 169-1 at 7-14.

Nor did the Court need to characterize the release as jurisdictional in order to grant defendants the full benefit of their merits position. If defendants are correct that the release bars certain claims, that issue may be decided as a defense. Bell v. Hood, 327 U.S. 678, 682 (1946), makes clear that whether the complaint states a cause of action is a merits question rather than a jurisdictional one, and that distinction counsels against collapsing a potentially dispositive defense into subject-matter jurisdiction. That warning is apt here.

19

The point here is not that the Court must now finally reject the release defense. The point is narrower and sufficient for Rule 59(e): the defense was not jurisdictional, the existing record did not establish a clear personal-capacity release by Plaintiff, and the present judgment therefore should not continue to close the case against OCIF and Trustee Lugo on that basis. At minimum, Docket No. 272 should be modified to correct the jurisdictional analysis, eliminate any with-prejudice effect from rulings grounded in immunity or threshold defenses, and reopen the case for further proceedings on whether any personal claims were ever released at all. Nothing in the present record justifies treating Plaintiff as though he knowingly signed away his own individual claims in his personal capacity.

## V. DOCKET NO. 273 SHOULD BE MODIFIED BECAUSE THE AGE DISMISSAL RESTED ON THRESHOLD GROUNDS THAT CANNOT SUPPORT A WITH-PREJUDICE JUDGMENT, AND BECAUSE RULE 4(M) DOES NOT GOVERN FOREIGN SERVICE.

Docket No. 273 held that personal jurisdiction and sufficient service of process were lacking as to The Age defendants. Docket No. 273 at 5, 9-10. The order also criticized Plaintiff's pace of service efforts, noting that formal Hague service still had not been perfected and describing the posture as more than a minor technical error. Id. at 9-10. Whatever the Court's assessment of those efforts, those are threshold grounds. They cannot support a merits-preclusive dismissal with prejudice.

The Federal Rules also undercut any suggestion that the ordinary domestic service clock dictated the result. Rule 4(m) expressly states that its time limit 'does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1).' Fed. R. Civ. P. 4(m). The point is not that foreign service may be pursued indefinitely without judicial supervision. The point is that foreign

defendants occupy a different service posture and that the remedy for perceived delay ordinarily lies in service management or, at most, a without-prejudice dismissal, not a final merits judgment.

Docket No. 273 compounded the problem by pairing its threshold rulings with a refusal to consider the record materials that Plaintiff invoked to show curability of the merits allegations. Docket No. 273 at 10. The result was a final order that mixed service and personal-jurisdiction defects with pleading analysis and then fed both categories into the universal with-prejudice judgment. Docket No. 276 at 1-2. Rule 59(e) should at minimum separate those concepts and ensure that any dismissal of The Age defendants on service or personal-jurisdiction grounds is without prejudice.

Plaintiff recognizes that the media claims are not the strongest merits issues in the case. This motion therefore does not depend on full reinstatement of those claims. But the threshold point is still substantial and worth correction: lack of personal jurisdiction and insufficient service are not merits adjudications, and the final judgment should not state otherwise.

## VI. DOCKET NO. 274 SHOULD BE MODIFIED BECAUSE SOVEREIGN-IMMUNITY AND SERVICE-BASED DISMISSALS AS TO THE FOREIGN DEFENDANTS CANNOT SUPPORT A WITH-PREJUDICE JUDGMENT.

Docket No. 274 adopted the R&R's sovereign-immunity analysis, held that the foreign defendants were protected by FSIA and common-law sovereign immunity, and then dismissed all claims against them with prejudice. Docket No. 274 at 8-12. The order further stated that service appeared improper under both the Hague Convention and the laws of the relevant countries and noted that this would be an additional reason to dismiss. Id. at 12 n.7. Those are, again, classic threshold rulings.

Plaintiff's objections to the foreign-defendant R&R had expressly argued that the recommendation rested on sovereign-immunity doctrines and that any perceived pleading deficiencies were curable and should not justify dismissal with prejudice. Docket No. 256 at 1-2. Whether or not the Court agrees with Plaintiff's broader challenge to the immunity analysis, the judgment still should not transform immunity and service rulings into a merits-preclusive disposition.

The Court's own order demonstrates why. It explained that the foreign defendants were protected by sovereign-immunity doctrines and that plaintiff had not shown that exceptions to immunity applied. Docket No. 274 at 8-12. If those holdings are correct, they mean the Court lacks authority to adjudicate the claims against those defendants. In that circumstance, the resulting dismissal must be without prejudice. See Fed. R. Civ. P. 41(b); Lebron-Rios, 341 F.3d at 13-14.

Accordingly, Docket No. 274 should be modified so that any dismissal grounded in FSIA, common-law sovereign immunity, and/or improper service is expressly without prejudice, and Docket No. 276 should be amended to match.

## VII. LIMITED ALTERNATIVE RELIEF IS BOTH AVAILABLE AND APPROPRIATE.

If the Court is not prepared to vacate every challenged ruling in full, it should at minimum grant limited relief targeted to the clearest legal errors. Rule 59(e) permits such calibrated correction. The Court could, for example, vacate only the sua sponte dismissal of the personal-capacity Bivens claims against Cole, Line, and Batdorf; amend the final judgment so that all threshold dismissals are without prejudice; reopen the federal side of the case, including as to the IRS/United States and the relevant federal officials, for focused further proceedings and

22

any appropriate limited amendment; and reopen the OCIF/Trustee Lugo side of the case to the extent Docket No. 272 treated a disputed, non-jurisdictional release theory as case-ending.

At minimum, that limited relief is especially appropriate now that the March 25, 2026 FOIA opinion confirms the federal record was being constrained by improper IRS withholding while this case was being closed. The Court need not resolve every merits dispute today to ensure that the IRS does not obtain litigation advantage from information another federal court has now ordered it to disclose, or to ensure that any dismissal entered at this stage is, at worst, without prejudice where threshold defects or an incompletely developed record remain the operative problem.

That narrower course would still materially correct the most serious defects in the March 12 judgment. It would restore adversarial process where the Court acted sua sponte, preserve the legal distinction between threshold dismissals and merits adjudications, prevent the release issue from doing jurisdictional work it cannot do, and avoid imposing unnecessary preclusive consequences on rulings that did not actually adjudicate the merits. Most importantly, it would prevent the present record from being used to hold that Plaintiff personally signed away his own claims in his individual capacity when the cited documents clearly do not establish any such personal release.

## VIII. DOCKET NO. 275 SHOULD BE VACATED OR MODIFIED IF THE COURT REOPENS THE JUDGMENT.

Docket No. 275 found moot Plaintiff's motion to amend/correct Docket No. 242, motion for reconsideration, and motion for leave to file document. Docket No. 275. That mootness ruling depended on the entry of final judgment and the closure of the case. If the Court grants any portion of this Rule 59(e) motion and reopens or materially amends the judgment, the

23

premise of Docket No. 275 no longer holds in full. The Court should therefore vacate or modify Docket No. 275 to the extent necessary to allow renewed consideration of the limited matters that remain practically relevant after correction of the judgment.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion under Rule 59(e), alter or amend the March 12, 2026 Judgment, Docket No. 276, vacate Docket No. 271 insofar as it sua sponte dismissed with prejudice the personal-capacity Bivens claims against Justin T. Cole, Matt Line, and Mike Batdorf, reopen the federal side of the case, including as to the IRS/United States and the relevant federal officials, for proper adversarial motion practice and, if the Court deems appropriate, focused leave to amend in light of the FOIA materials and other newly developed facts, amend Docket No. 276 so that all dismissals resting on lack of subject-matter jurisdiction, Eleventh Amendment immunity, sovereign immunity, lack of personal jurisdiction, and/or insufficient service are without prejudice, modify Docket No. 272 to clarify that release is not jurisdictional and that nothing in the cited liquidation documents clearly and unmistakably establishes that Plaintiff personally released his own individual claims in his personal capacity, reopen the case as to OCIF and Trustee Lugo to the extent the present judgment rested on that mischaracterized release theory, modify Docket Nos. 273 and 274 to eliminate any with-prejudice effect from threshold dismissals, vacate or modify Docket No. 275 as appropriate, and reopen the case for limited further proceedings consistent with the Court's amended judgment, so that the IRS and related federal actors do not benefit from improper withholding that another federal court has now held was legally insufficient, and so that any dismissal that remains, at worst, is without prejudice rather than a failure of justice built on an incompletely developed record.

24

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 1st day of April, 2026.

s/ Ismael Torres-Pizarro
Ismael Torres-Pizarro, Ph.D., P.E., Esq.
USDC-PR No. 231302
Domingo Cruz 642
Villa Prades, San Juan, PR 00924
Tel. (787) 315-5636
ismaeltorres2002@yahoo.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using

the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ Ismael Torres-Pizarro

25